THE STATE, EX REL. MORRISSEY, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL.

[Cite as State, ex rel. Morrissey, *v.* Indus. Comm. (1985), 18 Ohio St. 3d 285.]

(No. 84-601—Decided July 24, 1985.)

286

*Lang, Horenstein & Dunlevey, Bruce I. Nicholson* and *Stephen A. Watring,* for relator.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Jeffery W. Clark,* for respondent Industrial Commission.

*Smith & Schnacke Co., L.P.A., Michael F. Krall, Steve C. Carr, Sherry J. Cato* and *Gary W. Auman,* for respondent Federal Flooring Co.

*Per Curiam.* By this original action in mandamus, relator maintains the commission abused its discretion by failing to find a violation of the following safety requirements contained in Ohio Adm. Code 4121:1-3-12:

"(E)  Minimum instructions for qualifying operators.

"Instructions to operators in order to teach them the use of portable explosive-actuated fastening tools shall include, but shall not be limited to the following items:

"(1)  Before using a tool, the operator shall inspect it to determine that it is clean, that all moving parts operate freely, and that the barrel is free from obstructions.

"(2)  When a tool develops a defect during use, the operator shall immediately cease to use it until it is properly repaired.

"* * *

"(5) In case of a misfire, the operator shall hold the tool in the operating position for no less than thirty seconds, and then try to operate the tool a second time. The operator shall wait another thirty seconds, holding the tool in the operating position and only then shall proceed to remove the explosive load which shall be done in strict accordance with the manufacturer's instructions. Misfired cartridges shall be placed carefully in a metal container filled with water, and returned to the supervisor for disposal.

"* * *

"(7) Fasteners shall not be driven into very hard or brittle materials, including but not limited to cast iron, glazed tile, surface-hardened steel, glass block, living rock, face brick, or hollow tile.

"* * *

"(14) Any tool found not in proper working order shall be immediately removed from service. The tool shall be inspected at regular intervals and shall be repaired in accordance with the manufacturer's specifications."

Relator first contends the commission erred with regard to its interpretation of the instructional requirements placed upon employers pursuant to Ohio Adm. Code 4121:1-3-12(E)(1) through (7) set forth above. The record unequivocally demonstrates that Federal Flooring did not provide operational instructions relative to the explosive actuated fastening tools to relator or to other apprentices and journeymen. Instead, the employer contributed, pursuant to contract, seven cents for each hour worked by an apprentice or journeyman to the employees' union.[5] In return, the union agreed to train apprentices and journeymen in the application of their trade, as well as in instructional specific safety requirements. Based upon this contract, the commission denied relator's asserted breach of an instructional safety requirement, stating that "training was the responsibility of the union [not the employer]."

Relator submits that Federal Flooring cannot delegate its liability for failure to comply with a specific safety requirement to a third party, regardless of whether the delegation is accomplished pursuant to contract with a union in which the employee is a member. We agree. Pursuant to Section 35, Article II of the Ohio Constitution, the burden rests with "employer[s] to comply with any specific requirement for the protection of the lives, health or safety of employes, enacted by the General Assembly or in the form of an order adopted by such board * * *."

As was recognized in *State, ex rel. Blystone,* v. *Indus. Comm.* (1984), 14 Ohio App. 3d 238, 239:

---

[5] The term "union" refers to the Miami Valley Carpenter's District Council of the United Brotherhood of Carpenters and Joiners of America, AFL-CIO, and the West Central Ohio Chapter, Associated General Contractors of America.

"The duty to comply with a specific safety standard is constitutionally that of the employer to provide for the protection of the lives, health or safety of employees. Section 35, Article II, Ohio Constitution."

Thus, while an employer is certainly at liberty to contract with third parties to insure compliance with specific safety requirements, the ultimate responsibility for the failure to comply with such a requirement remains with the employer when, as here, an employee seeks compensation for the failure to abide by the safety requirement.

The resolution of the instructional issue, however, in relator's favor does not, by itself, justify the issuance of the writ, for the commission further concluded that even if the requisite instruction had been provided it "would not have prevented or lessened the injury." Thus, a causational issue was presented which the commission ultimately resolved against relator.

The seminal case in which this court has considered the issue of causation and the violation of a specific safety requirement is *State, ex rel. Haines,* v. *Indus. Comm.* (1972), 29 Ohio St. 2d 15 [58 O.O.2d 70]. Therein, it was stated at 17:

"* * *[T]he explicit language of Section 35, Article II of the Constitution of Ohio, requires not only that there be a 'failure of the employer to comply with any specific requirement for the lives, health and safety of the employ[ees] * * * in the form of an order adopted by such board [Industrial Commission],' but also that the injury, disease or death 'resulted because of such failure by the employer.'

"As a matter of constitutional interpretation, we reject the assertion of appellant that:

" 'Where a specific safety requirement has been violated and an accidental injury occurs under circumstances which permit a reasonable inference that compliance with the requirement could probably have avoided the injury (although the same facts might also permit the inference that the injury could have occurred despite compliance), an additional award is mandatory.'

"The question of whether an injury, disease or death 'resulted because of such failure by the employer' is a question of *fact* to be decided by the Industrial Commission, subject only to the 'abuse of discretion' test."

According to relator, the industrial injury occurred when the power fastener misfired while pressed against the concrete ceiling. It is relator's contention that after the misfire, he did not hold the power fastener in the operating position (pressed against the ceiling) since he was not made aware of this procedure. See Ohio Adm. Code 4121:1-3-12(E)(5). Instead, relator claims he lowered the fastener before the expiration of thirty seconds, at which time the power tool fired and the pin ricocheted off the concrete ceiling striking him in the head. There were no witnesses to the injury.

Conversely, Federal Flooring contended before the commission that

the power fastener was pressed against the ceiling when the tool was activated and that the ricochet occurred when the steel pin came into contact with a stone lodged in the concrete surface. This position was supported by the affidavit of Jack Neargarder, a vice president of Federal Flooring, as well as by an accident investigation report prepared by the commission. In addition, the commission had for its consideration a photograph of the ceiling taken subsequent to the accident which showed powder burns surrounding the area in question. In this regard, there was testimony that the powder burns could not have been deposited at the area in question if, as relator contended, the power fastener had been improperly lowered after an alleged misfire. Thus, even if relator had not received minimum instructions regarding the proper use of the power fastener, the employer contended before the commission that the tool was properly being used when relator sustained his injury.

As is apparent from the foregoing, the record demonstrates that the commission was presented with a disputed factual situation on the issue of causation. Accord *State, ex rel. Haines,* v. *Indus. Comm., supra.* In *State, ex rel. Roberts,* v. *Indus. Comm.* (1984), 10 Ohio St. 3d 1, we reaffirmed the longstanding principle that "the determination of disputed factual situations as well as the interpretation of a specific safety requirement is within the final jurisdiction of the commission, and subject to correction by action in mandamus only upon a showing of an abuse of discretion." *Id.* at 4, citing *State, ex rel. Allied Wheel Products, Inc.,* v. *Indus. Comm.* (1956), 166 Ohio St. 47 [1 O.O.2d 190]; *State, ex rel. Cox,* v. *Indus. Comm.* (1981), 67 Ohio St. 2d 235 [21 O.O.3d 152]; *State, ex rel. Samkas,* v. *Indus. Comm.* (1982), 70 Ohio St. 2d 279 [24 O.O.3d 279]. See, also, *State, ex rel. Humble,* v. *Mark Concepts, Inc.* (1979), 60 Ohio St. 2d 77 [14 O.O.3d 275]. An abuse of discretion is present only in those instances where there is no evidence upon which the commission could have relied in reaching its factual conclusions. *State, ex rel. Stanadyne, Inc.,* v. *Indus. Comm.* (1984), 12 Ohio St. 3d 62; *State, ex rel. Posey,* v. *Indus. Comm.* (1984), 12 Ohio St. 3d 298; *State, ex rel. Questor Corp.,* v. *Indus. Comm.* (1982), 70 Ohio St. 2d 240 [24 O.O.3d 334]. Since a careful review and examination of the record demonstrates that sufficient evidence exists supporting the commission's determination that relator's injury did not arise as a result of a lack of instructional training, its decision will not be disturbed. *State, ex rel. Roberts,* v. *Indus. Comm., supra,* at 4.

Alternatively, relator contends that Federal Flooring violated the safety requirement contained in Ohio Adm. Code 4121:1-3-12(E)(14) by failing to remove the power fastener from service after learning that it was subject to misfiring prior to its use by relator on the day the injury was sustained. Relator's contention is supported by his own affidavit, as well as by the affidavit of Jack Byrd, a former Federal Flooring employee.

On the other hand, the employer submitted affidavits and testimony detailing its procedure for removing defective tools from the workplace so

as not to be available for use by employees, and that at the time of the accident it had not been made aware that the subject fastener was defective. Evidence also was submitted to the effect that the fastener had been overhauled in 1979, and the commission's initial investigation indicated there was no mechanical failure of the equipment at the time the injury was sustained.

Again, a disputed factual situation was presented on the issue of whether a violation of a safety requirement had occurred, which the commission ultimately resolved in favor of the employer. In view of the record before this court, the commission's conclusion cannot be said to constitute an abuse of discretion. Essentially, relator is requesting that the evidence be reweighed, a request which has repeatedly been denied by this court. See *State, ex rel. GF Business Equip., Inc.,* v. *Indus. Comm.* (1981), 66 Ohio St. 2d 446 [20 O.O.3d 379]; *State, ex rel. Kilburn,* v. *Indus. Comm.* (1982), 1 Ohio St. 3d 103.

For the foregoing reasons the writ prayed for is hereby denied.

*Writ denied.*

CELEBREZZE, C.J., SWEENEY, LOCHER, HOLMES, C. BROWN, DOUGLAS and WRIGHT, JJ., concur.

