THE STATE, EX REL. COTTERMAN, APPELLANT, *v.* ST. MARYS FOUNDRY ET AL., APPELLEES.

[Cite as State, ex rel. Cotterman, *v.* St. Marys Foundry (1989), 46 Ohio St. 3d 42.]

(No. 86-387—Submitted June 26, 1989—Decided October 11, 1989.)

*Knepper, White, Arter & Hadden, Douglas M. Bricker* and *Michael L. Maxfield,* for appellant.

*Smith & Schnacke, Gary Auman* and *Steve C. Carr,* for appellee St. Marys Foundry.

*Anthony J. Celebrezze, Jr.,* attorney general, *Janet E. Jackson* and *Richard C. Slavin,* for appellee Industrial Commission.

ALICE ROBIE RESNICK, J. Mandamus will not lie to vacate an order of the Industrial Commission unless such order constitutes an abuse of discretion. See *State, ex rel. Mees,* v. *Indus. Comm.* (1972), 29 Ohio St. 2d 128, 130, 58 O.O. 2d 319, 320, 279 N.E. 2d 861, 862; *State, ex rel. Harris,* v. *Indus. Comm.* (1984), 12 Ohio St. 3d 152, 12 OBR 223, 465 N.E. 2d 1286. Where the record shows "some evidence" to support the commission's findings, these findings will not be disturbed. *State, ex rel. General Motors Corp.,* v. *Indus. Comm.* (1975), 42 Ohio St. 2d 278, 283, 71 O.O. 2d 255, 258, 328 N.E. 2d 387, 390; *State, ex rel. Cox,* v. *Indus. Comm.* (1981), 67 Ohio St. 2d 235, 241, 21 O.O. 3d 147, 150, 423 N.E. 2d 441, 445.

Appellee St. Marys Foundry initially contends that a writ of mandamus is inappropriate because appellant did not exhaust her administrative remedies. Specifically, St. Marys Foundry argues that appellant cannot seek a writ of mandamus because she did not file a motion for a rehearing pursuant to Ohio Adm. Code 4121-3-20(G). This section gives either party the right to file a motion requesting a rehearing within thirty days of the receipt of the commission's order deciding the issues in an application for a VSSR award.

However, a motion for rehearing will be granted only if one of two circumstances is found:

"(a) In order to justify a rehearing of the commission's order, the motion shall be accompanied by new and additional proof not previously considered and relevant to the specific safety requirement violation.

"(b) A rehearing may also be indicated in exceptional cases where the order was based on an obvious mistake of fact." Ohio Adm. Code 4121-3-20 (G)(1)(a) and (b).

The record does not show that appellant had any new and additional proof or that the order was based on any obvious mistake of fact. Because neither criterion is met, the motion for rehearing necessarily would be denied. See Ohio Adm. Code 4121-3-20(2).

While it is true that mandamus relief will be denied if administrative avenues are not exhausted, see, *e.g., State, ex rel. Schindel,* v. *Rowe* (1971), 25 Ohio St. 2d 47, 54 O.O. 2d 173, 266 N.E. 2d 569, and *State, ex rel. Foreman,* v. *City Council* (1965), 1 Ohio St. 2d 132, 30 O.O. 2d 485, 205 N.E. 2d 398, it also is true that a person need not pursue administrative remedies if such an act would be futile. See *State, ex rel. Killeen Realty Co.,* v. *East Cleveland* (1959), 169 Ohio St. 375, 8 O.O. 3d 409, 160 N.E. 2d 1. See, also, *Kaufman* v. *Newburgh Heights* (1971), 26 Ohio St. 2d 217, 55 O.O. 2d 462, 271 N.E. 2d 280 (failure to exhaust administrative remedies may be a defense only if there is a remedy effectual to afford the relief sought). Thus, in this case, appellant's failure to move for a rehearing will not preclude her action in mandamus.

Appellees next contend that the commission did not abuse its discretion in denying the VSSR award.

Authority to award additional compensation to an employee injured or killed because of an employer's alleged violation of a specific safety requirement arises from Section 35, Article II of the Ohio Constitution.[1] It has been held that "[t]he term, 'specific requirement,' * * * does not comprehend a general course of conduct or general duties or obligations flowing from the relation of employer and employee, but embraces such lawful, specific and definite requirements or standards of conduct as are prescribed by statute or by orders of the Industrial Commission, and which are of a character plainly to apprise an employer of his legal obligation toward his employees." *State, ex rel. Trydle,* v. *Indus. Comm.* (1972), 32 Ohio St. 2d 257, 61 O.O. 2d 488, 291 N.E. 2d 748, paragraph one of the syllabus.

---

[1] Section 35, Article II of the Ohio Constitution provides in pertinent part:

"* * * Such board shall have full power and authority to hear and determine whether or not an injury, disease or death resulted because of the failure of the employer to comply with any specific requirement for the protection of the lives, health or safety of employes, enacted by the General Assembly or in the form of an order adopted by such board, and its decision shall be final; and for the purpose of such investigations and inquiries it may appoint referees. When it is found, upon hearing, that an injury, disease or death resulted because of such failure by the employer, such amount as shall be found to be just, not greater than fifty nor less than fifteen per centum of the maximum award established by law, shall be added by the board, to the amount of the compensation that may be awarded on account of such injury, disease, or death, and paid in like manner as other awards; and if such compensation is paid from the state fund, the premium of such employer shall be increased in such amount, covering such period of time as may be fixed, as will recoup the state fund in the amount of such additional award, notwithstanding any and all other provisions in this constitution."

A specific requirement, therefore, is one that "* * * (1) was enacted either by the General Assembly or by an order of the Industrial Commission and .(2) * * * is specific as opposed to general and (3) * * * is for the protection of the lives, health, or safety of employees." *Id.* at paragraph two of the syllabus.

Appellant in her original complaint in mandamus alleged that appellee violated Ohio Adm. Code 4121:1-5-15 (C), (1), (4), (6), and (9); 4121:1-5-15(D) (1)(a); and 4121:1-5-15(D)(2). On appeal to this court, however, appellant states that the violation at issue specifically concerns Ohio Adm. Code 4121:1-5-15 (D)(2). This requirement, at the time relevant herein, provided that:

"Alloy steel chain slings shall not be used with loads in excess of the rated capacities prescribed in table 15-A. Other alloy steel chain slings not included in this table shall be used in accordance with manufacturer's recommendations."

Hence, Ohio Adm. Code 4121:1-5-15(D)(2) qualifies as a specific requirement as found in Section 35, Article II of the Ohio Constitution. Ohio Adm. Code 4121:1-5 is an "order" of the Industrial Commission "* * * providing reasonable safety for life, limb, and health of employees" in workshops and factories. Ohio Adm. Code 4121:1-5-01 (A). Ohio Adm. Code 4121:1-5-15(D)(2) specifically referred to a detailed table in which load limits for alloy steel chain slings were listed, or in the alternative, to manufacturer's recommendations. An employer referring to this section would know what the maximum limits were and know what its obligations were regarding alloy steel chain slings.

Once a requirement is determined to be a specific safety requirement, the employee has the burden of showing a violation of this specific safety requirement. See *State, ex rel. Watson,* v.

*Indus. Comm.* (1986), 29 Ohio App. 3d 354, 29 OBR 483, 505 N.E. 2d 1015. The Industrial Commission in its findings and order of September 24, 1984 stated that "claimant's application for violation of a specific safety requirement be denied for the reason that claimant has cited no specific safety requirement which was violated when decedent sustained his death."

However, the commission appears to have based its decision that there was no VSSR solely upon the fact that the decedent was a foundry superintendent at St. Marys Foundry with forty-four years of experience with that company. In fact, the commission stated that "[h]ad the decedent's actions resulted in injury or death to a *subordinate worker* the Hearing Officer *would have found a safety violation* and made an appropriate award." (Emphasis added.) Moreover, it appears that the commission indeed found that Ohio Adm. Code 4121-5-15(D)(2) had been violated because "[b]oth the weight of the evidence and common sense lead to the conclusion that the cause of the straightening of the hooks and the resultant fall of the core was that the load placed on the chain sling was in excess of its limits." If the load placed on the chain sling was in excess of its limits, then it violated Ohio Adm. Code 4121:1-5-15(D)(2). Where the uncontested evidence shows that an employer has violated a specific safety requirement which results in the injury or death to an employee, then the commission's "denial of an employee's application for an additional award for violation of a specific safety requirement constitutes an abuse of discretion * * *." *State, ex rel. Truckey,* v. *Indus. Comm.* (1972), 29 Ohio St. 2d 132, 58 O.O. 2d 321, 279 N.E. 2d 875, syllabus.

We further note that the referee's report concluded that the commission had based its finding of no VSSR on

the fact that the "decedent had selected the chain sling assembly in question, and based upon a finding that the decedent was the ultimate authority responsible for selection of chain sling assemblies for lifting maneuvers in respondent-employer's foundry." The referee also stated that "[c]learly, the staff hearing officer's decision finding no violation was based upon a determination that the decedent, as the foundry superintendent, was the highest authority in determining which particular chain sling assembly to use for any given lifting maneuver." The referee concluded that decedent's actions precluded an additional award for violation of a specific safety requirement.

It is clear that the commission focused on the decedent's status as superintendent in denying an additional VSSR award. Thus this court must determine if the decedent's position as a foundry superintendent and his alleged conduct in selecting the inadequate chains will bar appellant's recovery of an additional award. We initially note that Section 35, Article II of the Ohio Constitution does not distinguish between employees and supervisors. It refers instead to "workmen" and "employes." We have held that there is no distinction between workmen and employees for the purposes of the Workers' Compensation Act. See *Goldberg* v. *Indus. Comm.* (1936), 131 Ohio St. 399, 402, 6 O.O. 108, 109, 3 N.E. 2d 364, 366.

Further, we have stated that an officer, director, or shareholder of a corporation who is injured while engaging in manual labor of the corporation as its employee will not be denied compensation under the Workers' Compensation Act solely because of his status as an officer, shareholder or director. See *Kuehnl* v. *Indus. Comm.* (1940), 136 Ohio St. 313, 16 O.O. 448, 25 N.E. 2d 682, paragraph one of the syllabus.

It also has been held that a president of a small, closely held corporation who performed manual labor as superintendent of construction was an employee within the meaning of the Workers' Compensation Act. "A person employed by a corporation as its superintendent of construction, who at times performs manual labor in such capacity, is an employee within the meaning of the Workmen's Compensation Act, although such person is also president of the corporation, and, if injured while engaged in such manual labor, is entitled to participate in the state insurance fund." *Hillenbrand* v. *Indus. Comm.* (1943), 72 Ohio App. 427, 27 O.O. 341, 52 N.E. 2d 547, syllabus.

Additionally, R.C. 4123.01(A)(1)(b) provides a broad definition of "employee" under the Workers' Compensation Act:

"As used in Chapter 4123. of the Revised Code:

"(A)(1) 'Employee,' 'workman,' or 'operative' means:

"* * *

"(b) Every person in the service of any person, firm, or private corporation, including any public service corporation, that (i) employs one or more workmen or operatives regularly in the same business or in or about the same establishment under any contract of hire, express or implied, oral or written, including aliens and minors * * *."

The statute does not require that an employee be non-supervisory, but requires only that he be in the service of any person, firm or private corporation.

In *Deyo* v. *Arizona Grading & Constr. Co.* (1916), 18 Ariz. 149, 157 P. 371, it was contended that "employee" as found in the Employers' Liability Law did not include "superintendent."

However, the Arizona Supreme Court rejected that argument:

"* * * In all of the especially dangerous and hazardous occupations enumerated in the statute when prosecuted on a large scale, it is as essential to have superintendents as it is to have workmen, and no good reason appears to us why a business or enterprise or occupation should be charged with damages sustained by workmen and not be charged with damages sustained by the superintendent, if he should be injured in the service without negligence upon his part." *Id.* at 158, 157 P. at 374.

Appellee, however, argues that an employee's status should be considered for purposes of an additional award under a VSSR. St. Marys contends that while supervisory status may not be a factor in determining an employee's right to participate in the State Insurance Fund, it should be a factor in a VSSR award because such an additional award is in the form of a penalty.

It is true that "[a]n award for the violation of a specific safety requirement is deemed a penalty to the employer subject to the rule of strict construction with all reasonable doubts concerning the interpretation of the safety standard to be construed against the applicability of the standard to the employer. * * *" *State, ex rel. Watson, supra,* at 358, 29 OBR at 487, 505 N.E. 2d at 1019. However, we find no case authority to support appellee's contention that being a supervisor will necessarily bar recovery for a VSSR.

Instead, the proper focus in determining whether a VSSR award should be made remains on the employer. "It is the employer who has the obligation to comply with specific safety requirements adopted for the protection of employees." *State, ex rel. Blystone,*

v. *Indus. Comm.* (1984), 14 Ohio App. 3d 238, 239, 14 OBR 266, 267, 470 N.E. 2d 495, 496. The failure of the employer to comply with a specific safety requirement forms the basis for an additional award. See *State, ex rel. Reed, v. Indus. Comm.* (1965), 2 Ohio St. 2d 200, 202, 31 O.O. 2d 408, 410, 207 N.E. 2d 755, 758.

Generally, negligence or absentmindedness of the employee will not bar recovery for a VSSR. "* * * [N]egligence or contributory negligence of a claimant is not ordinarily a defense in a workers' compensation case. In fact, the safety regulation, such as the one with which we are here concerned, is intended to protect employees against their own negligence and folly as well as to provide them a safe place to work. Whether * * * [the employee] was negligent in failing consciously to use the stopping devices available, rather than attempting to extricate himself from his dilemma first, is not controlling. The issue is whether the machine was equipped with safety devices, as required * * *." *State, ex rel. United States Steel Corp., v. Cook* (1983), 10 Ohio App. 3d 183, 186, 10 OBR 254, 257-258, 461 N.E. 2d 916, 919.

This is not to say that an employee's conduct will never be a factor in a VSSR award. For example, if an employee unilaterally violates a safety requirement, see *State, ex rel. Frank Brown & Sons, Inc., v. Indus. Comm.* (1988), 37 Ohio St. 3d 162, 524 N.E. 2d 482, or if an employee fails to use safety goggles provided for him by his employer, who complies with a safety requirement when it provides such safety equipment, see *Kale* v. *Indus. Comm.* (May 3, 1984), Franklin App. No. 83AP-968, unreported, then an additional award may be denied.

Here nothing shows that the decedent voluntarily chose the incorrect

chain. In fact, the commission stated that his decision "must be considered an aberration attributable to human error."

An employer does not escape liability for violation of a specific safety requirement by giving a supervisory employee the responsibility to comply with such safety requirement. Although the record shows that the decedent was a safety-conscious employee who had received safety training, the ultimate responsibility for meeting specific safety requirements remains with the employer.

In *State, ex rel. Morrissey,* v. *Indus. Comm.* (1985), 18 Ohio St. 3d 285, 287, 18 OBR 336, 338, 480 N.E. 2d 810, 813, we held that an employer could not "delegate its liability for failure to comply with a specific safety requirement to a third party. * * *" Accordingly, we hold that the commission abused its discretion when it denied appellant's application for an additional award based on a VSSR.

The ultimate responsibility of providing a safe work environment lies with the employer and it cannot be delegated to a subordinate. In this case, St. Marys Foundry must effectuate some means of accurately and precisely exhibiting the weight of the core and the appropriate chain sling to be used. St. Marys Foundry cannot simply turn this task over to a superintendent to select the right chain sling for each core. Providing a variety of chain slings is insufficient to show compliance with Ohio Adm. Code 4121:1-5-15(D)(2). Hence, St. Marys Foundry has violated the specific safety requirement and appellant is entitled to an additional award for a VSSR.

The judgment of the court of appeals is reversed, and the writ is hereby allowed.

*Judgment reversed and writ allowed.*

SWEENEY, DOUGLAS and H. BROWN, JJ., concur.

MOYER, C.J., HOLMES and WRIGHT, JJ., dissent.

WRIGHT, J., dissenting. I respectfully dissent and would affirm the court of appeals' decision based upon two independently sufficient grounds.

First, the appellant did *not* exhaust her administrative remedies when she failed to timely file a motion for a rehearing. A writ of mandamus is an extraordinary remedy that may be denied when a relator fails to exhaust his administrative remedies since an administrative appeal is an adequate remedy at law. *Kaufman* v. *Newburgh Heights* (1971), 26 Ohio St. 2d 217, 55 O.O. 2d 462, 271 N.E. 2d 280. The exhaustion of administrative remedies, of course, is not necessary if there is no remedy that is "effectual to afford the relief sought." *Id.* at paragraph one of the syllabus. In this case, there is no doubt that upon a rehearing the commission had the authority to grant all the relief the appellant sought.

The only close question in this case is whether the appellant had grounds for requesting a rehearing. Ohio Adm. Code 4121-3-20(G) provides two bases for a rehearing — the submission of "new and additional proof not previously considered" or "where the order was based on an obvious mistake of fact." The appellant in her second proposition of law alleges that the hearing officer's order cites no evidence to support the finding that the decedent selected the chain sling assembly and, furthermore, that no conclusive evidence of this alleged selection was presented to the commis-

sion. This argument would, in my view, justify a motion for a rehearing under the second requirement of Ohio Adm. Code 4121-3-20(G), and it would give the commission an opportunity to clarify or reconsider its determination. I cannot agree with the majority that such an effort would be a mere exercise in futility. Given the limitations upon the courts when evaluating the factual findings of the Industrial Commission, parties should be required in circumstances such as these to exhaust all administrative appeals before seeking an extraordinary writ of mandamus. Such a posture follows well-established law and ensures the most complete record possible, which in turn facilitates effective review.

Even so, the court of appeals' ruling should be affirmed because the record contains some evidence, as specified by the Industrial Commission, to support its factual findings. Therefore, those findings must not be disturbed. *State, ex rel. Humble,* v. *Mark Concepts, Inc.* (1979), 60 Ohio St. 2d 77, 14 O.O. 3d 275, 397 N.E. 2d 403. Such a conclusion should appear obvious in light of the facts before us.

The parties stipulated that the core that fell on appellant's decedent weighed at least 4,700 pounds. It is not in dispute that heavier chain slings were available, but that in this case, according to the hearing officer's order, "[the] weight of the evidence and common sense lead to the conclusion that the cause of the straightening of the hooks [attached to the sling] and the resultant fall of the core was that the load placed on the chain sling was in excess of its limits." The appellant argues that the analysis is complete at this point because Ohio Adm. Code 4121:1-5-15(D)(2)[2] was violated. However, Section 35, Article II of the Ohio Constitution provides that:

"* * * Such board shall have full power and authority to hear and determine whether or not an injury, disease or death resulted because of the *failure of the employer* to comply with any specific requirement for the protection of the lives, health or safety of employes * * *. When it is found, upon hearing, that an injury, disease or *death resulted because of such failure by the employer,* such amount as shall be found to be just * * * shall be added by the board, to the amount of the compensation that may be awarded on account of such injury * * *." (Emphasis added.)

An award for violating a specific safety requirement ("VSSR") is deemed a penalty to the employer, and the focus is therefore upon the action or inaction of the employer. Accordingly, the failure of a required safety device, standing alone, may not lead to a VSSR award. *State, ex rel. Mees,* v. *Indus. Comm.* (1972), 29 Ohio St. 2d 128, 58 O.O. 2d 317, 279 N.E. 2d 861; *State, ex rel. Barrett,* v. *Indus. Comm.* (1963), 175 Ohio St. 255, 25 O.O. 2d 1, 193 N.E. 2d 516. Furthermore, if the claimant or decedent is injured through the failure of equipment that is not the property of, or under the control of, the employer, then a VSSR award may be denied. *State, ex rel. Bowling,* v. *Indus. Comm.* (1982), 8 Ohio App. 3d 32, 8 OBR 35, 455 N.E. 2d 1311. In *Bowling,* a worker assembled a scaffold using a wooden

---

[2] Ohio Adm. Code 4121:1-5-15(D)(2) provided:

"Alloy steel chain slings shall not be used with loads in the excess of the rated capacities prescribed in table 15-A. Other alloy steel chain slings not included in this table shall be used in accordance with manufacturer's recommendations."

board which failed because it was defective. The employer had no knowledge of the particular plank, did not own it, and was not responsible for it, although the use of a plank of some sort was necessary to complete the assigned welding job. The fact that the plank failed and the fact that regulations existed mandating the correct dimensions of planks used in scaffolds were not dispositive.

The court of appeals' decision in this case relied upon *Kale* v. *Indus. Comm.* (May 3, 1984), Franklin App. No. 83AP-968, unreported, in which the Industrial Commission found that an employer had provided mandatory safety goggles for use by its employee. The employee chose not to wear them and injured his eye. A VSSR award was denied because the *employer* had done all that was required by the regulations — to provide eye goggles so the employee could safely perform his task. The focus was not on the negligence of the worker in failing to wear goggles. Likewise, in this case the employer in fact made available the correct slings to safely lift the core. The decedent simply selected the wrong sling and happened to be standing underneath it. The *employer* had done what the regulations required of it by making available the correct equipment to perform the required task. It is obvious from the regulations and the record in this case that the correct configuration of sling components will vary from task to task. The correct sling selection, of course, must be determined by someone. The affidavits specifically relied upon by the hearing officer assigned this responsibility to the decedent. The affidavits also establish that the decedent was thoroughly trained and experienced in the selection and use of slings. Thus,

the *employer* was *not* remiss in delegating to the decedent that task of selecting and adjusting slings.

The reasoning of the majority to the contrary notwithstanding, the facts in this case are completely dissimilar to those in cases where a worker negligently reaches into the moving parts of a machine which is neither guarded nor provided with an automatic stopping device. See *State, ex rel. Hartco, Inc., Custom Coated Products,* v. *Indus. Comm.* (1988), 38 Ohio St. 3d 181, 527 N.E. 2d 815; *State, ex rel. United States Steel Corp.,* v. *Cook* (1983), 10 Ohio App. 3d 183, 10 OBR 254, 461 N.E. 2d 916. *The regulation at issue requires the employer only to supply the correct slings to its employee.* Decedent, a thoroughly trained and experienced employee, was authorized by the employer to select and adjust the sling. It must be emphasized that the decedent was not required to use an inadequate sling.

The hearing officer's order was sufficiently specific regarding the facts relied upon for his decision. The order is not the conclusory sort of order criticized in *State, ex rel. Mitchell,* v. *Robbins & Myers, Inc.* (1983), 6 Ohio St. 3d 481, 6 OBR 531, 453 N.E. 2d 721. As can be seen, the syllabus law announced in this matter, while accurate, simply misses the point with respect to the salient points in this controversy.

The appellant has failed for the foregoing reasons to demonstrate a clear right to a writ of mandamus. Accordingly, I would affirm the court of appeals and deny the request for a writ of mandamus.

MOYER, C.J., and HOLMES, J., concur in the foregoing dissenting opinion.