OPINIONS OF THE SUPREME COURT OF OHIO
        The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
        Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
        NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

The State ex rel. Thomson Newspapers, Inc., Appellant, v.
Industrial Commission of Ohio et al., Appellees.
[Cite as State ex rel. Thomson Newspapers, Inc. v. Indus. Comm.
(1994),        Ohio St.3d      .]
Workers' compensation -- Employee found lying at bottom of
        elevator pit -- Finding by Industrial Commission that
        employer violated Ohio Adm.Code 4121:1-1-04(c)(4)
        supported by "same evidence," when.
        (No. 93-1299 -- Submitted June 29, 1994 -- Decided
Setember 14, 1994.)
        Appeal from the Court of Appeals for Franklin County, No.
91AP-1045.
        Appellant owns the Zanesville Times-Recorder ("ZTR").  The
building in which ZTR is housed has three levels and is
serviced by, among other conveyances, a freight elevator.
According to a statement of Wesley L. Wilson, ZTR maintenance
supervisor:
        "To operate this freight elevator, you must raise the gate
and get onto the elevator.  The gate must then be lowered into
the lock position before the elevator will move.  There is a
safety lock switch incorporated into each gate; this is a
combination of a  mechanical and electrical device.  There is a
wheel in these locks that is depressed by the presence of the
elevator car; there is a bar that must be engaged in order for
the gate to open.  The car must be there or the gate will not
open, and the elevator car will not move unless the gate is
lowered (closed)."
        On August 11, 1988, pursuant to yearly inspection, the
Department of Industrial Relations, Division of Elevator
Inspection, reissused a certificate of operation, having found
no safety defects in the elevator or hoistway.
        On September 19, 1988, only three people had keys to run
the elevator: Wilson, Dale "Red" McIntire, full-time custodian,
and Herbert "Ralph" McIntire, the new part-time janitor.
Wilson left the building that day at approximately 4:15 p.m.
He later recalled:
        "There are certain procedures I go through each and every
time I leave the building, like rounds I make.  I lock the

doors that go into the elevators, and close both doors that lead to the maintenance office. These doors automatically lock when they are closed. The elevator is always left standing (parked) on the main floor.

"I go up the stairs, as I did this evening, and lock the elevator. I left the area at about 4:15 p.m. this evening. At this point, all doors leading to the maintenance office were locked, and the elevator was locked and on the main floor."

Shortly after 6:00 p.m., Dale found Herbert lying at the bottom of the elevator pit. He later died. Dale told police that:

"He was on the top level where the elevator was locked and he attempted to use the elevator. The elevator would not operate, so he went down to the next level, the middle level and [sic] to see if the gate was in place, blocking entrance into the elevator shaft. Dale McIntire stated that the reason he did this was because Herbert McIntire routinely kept the gate open for unknown reason. When he arrived at the middle level, he found that the gate had been lifted up and he looked inside the shaft and found Herbert at the bottom of the shaft."

Police officers at the scene took pictures from both middle and lower levels. Patrolman Arter reported that:

"During this time, the gates were closed and Sgt. Miller and myself raised both the middle level gate to the elevator shaft and the bottom level of the building's elevator shaft gate. They were easily opened up by myself and Sgt. Miller."

On September 27, 1988, the Department of Industrial Relations investigated the accident and found no safety requirements violated or other hazards present.

After a workers' compensation death claim was allowed, widow-appellee Phyllis J. McIntire moved appellee Industrial Commission to find violations of two specific safety requirements ("VSSR"). A commission investigator was unable to contact Dale McIntire. Wilson related to the investigator that:

"All that I know about the actual incident was told to me by 'Red' Dale McIntire. He is the full-time janitor, and was to work with Herbert McIntire that evening. 'Red' stated that he got to work, and found the elevator on the main floor, locked, just as I had left it. He also stated that the doors in the basement that lead to the Maintenance Office were locked. Red stated that he assumed Herbert was not at work yet; he knew differently when he got to the basement floor and found the lights on in the maintenance office. The lights in the rest of the area were off, making it very dark. Red started looking for Herbert, and found him at the bottom of the elevator pit. The gate on the basement floor had been physically forced partially open. This gate has a safety lock switch on it as well, and it is very difficult to force it open 'past' the safety switch. It can be forced open with the elevator car not present, but it is very difficult."

A commission staff hearing officer found a violation of Ohio Adm. Code 4121:1-1-04(C)(4), ruling:

"Rule 4121:1-1-04(C) relates to the operating characteristics of elevators * * *. This rule states the following, 'hoistway door interlocks that operate to remain closed at all times when the car is away from the landing and that operate to prevent the hoistway door from being opened

from outside the hoistway while the car is away from the landing.' Hence this rule requires that the hoistway door is to be in a locked position when the car is away from the landing and the hoistway door (gate) cannot be opened when the car is away from the door.

"Based on a careful review of the evidence, it is concluded that the interlock on this hoistway door was defective in that the decedent was able to open the hoistway door when the car was away from the landing and that fact proximally [sic] caused the decedent's death in that the open hoistway door permitted the decedent to fall down the elevator shaft. Therefore, the employer is found to have violated this rule.

"The conclusion that the interlock was defective at the time of injury was based first, on the fact that in 1967, 1976, 1979, and in 1981, the Department of Industrial Relations noted in their investigation reports that the hoistway door interlocks needed to be repaired to prevent the gate from being opened when the elevator car was away from the floor. Consequently[,] historically the interlocks on the hoistway doors were shown to be defective.

"Secondly, police reports noted that on the same day the accident occurred that two policemen were able to open two hoistway gates without difficulty thereby directly indicating the presence of defective hoistway door interlocks on the date of injury."

Appellant unsuccessfully sought rehearing.

Appellant filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission abused its discretion in assessing a VSSR. The appellate court denied the writ.

This cause is now before this court upon an appeal as of right.

Baughman & Associates Co., L.P.A., R. Patrick Baughman, James V. Weixel, Jr., and Alys Portman Smith, for appellant.

Lee Fisher, Attorney General, and Jetta Mencer, Assistant Attorney General, for appellee Industrial Commission.

Per Curiam. Ohio Adm. Code 4121:1-1-04(C)(4) provides:

"(C) Between inspections by or on behalf of the authorized public agency, the employer shall promptly correct any operational deficiency that becomes evident in any one of the following controls, gates, devices or interlocks:

"* * *

"(4) The hoistway door interlocks that operate to remain closed at all times when the car is away from the landing and that operate to prevent the hoistway doors from being opened from outside the hoistway while the car is away from the landing[.]"

Appellant urges that there is no evidence that the hoistway door interlocks were defective. Alternatively, it claims that there is no evidence that any defect was evident to appellant since the last inspection took place. We disagree.

The circumstances of decedent's death are foggy. It is known only that a gate was partially open, thereby exposing the elevator shaft, and that claimant was found at its bottom.

Evidence also indicates that decedent, for reasons unknown, had previously left gates open. All, therefore, agree that decedent himself raised the gate and then fell into the shaft.

The commission held that had the hoistway lock been working properly, the gate could not have been raised while the car was away from the landing. Citing State ex rel. Jeep Corp. v. Indus. Comm. (1989), 42 Ohio St.3d 83, 537 N.E.2d 215, appellant responds that it is not an absolute guarantor of either its employees' safety or of the infallability of a given safety device. Appellant argues that it should not be penalized when a claimant takes extraordinary measures to force an interlocked gate to open.

Appellant's argument might be persuasive if the commission had found that decedent employed extraordinary effort to defeat the lock. To the contrary, it determined that, based on police reports, the gates could be opened without any difficulty. This evidence supports a finding, not that the lock was working and circumvented, but that the lock was not working at all.

Appellant attacks the police statements as fatally flawed, since they do not identify where the elevator car was in relation to the gate when the officers tested the gates. Obviously, if the car was at the gate landing, the gate would readily open, eroding the relevance of the officers' findings. Logic defeats appellant's position.

Admittedly, the reports do not expressly indicate where the car was when the officers tested the gates. However, for decedent to have fallen to the shaft's bottom from the middle or bottom level, the car necessarily had to have been above him. This coincides with Wilson's statement that the car was at the top level when he left. Dale, moreover, could not have seen decedent's body from mid-level unless the car was above him.

So, too, with the police reports. The officers could not have photographed the pit from the mid and lower levels with the car in the way. The report also states that the gates were checked contemporaneously with the photographs. From these facts, one inference emerges -- that the gates were easily raised with the car absent.

Consistent with its emphasis on decedent's actions, appellant suggests that decedent's conduct constituted a deliberate circumvention of the safety device so as to insulate appellant from VSSR liability. This claim fails. Clearly an employee's conduct can foreclose VSSR liability. For example, if an employer complies with a specific safety requirement and the claimant unilaterally circumvents the device, VSSR liability is avoided. State ex rel. Cincinnati Drum Serv., Inc. v. Indus. Comm. (1990), 52 Ohio St.3d 135, 556 N.E.2d 459; State ex rel. Cotterman v. St. Marys Foundry (1989), 46 Ohio St.3d 42, 544 N.E.2d 887; State ex rel. Frank Brown & Sons, Inc. v. Indus. Comm. (1988), 37 Ohio St.3d 162, 524 N.E.2d 482. This defense, however, is predicated on a finding that, before the claimant's intervention, the specific safety requirement had been satisfied.

This was not found by the commission in this case. When it concluded that the officers could easily open the hoistway gate absent the car, it found that the interlocks did not comply with the specific safety requirement. The necessary

prerequisite to consideration of decedent's conduct does not, therefore, exist.

Decedent did not use common sense in leaving the gate open. However, it is precisely that kind of lapse in judgment against which specific safety requirements are designed to protect. As Cotterman observed, specific safety requirements are "'intended to protect employees against their own negligence and folly as well as to provide them a safe place to work.'" 46 Ohio St. 3d at 47, 544 N.E.2d at 892, quoting State ex rel. United States Steel Corp. v. Cook (1983), 10 Ohio App.3d 183, 186, 10 OBR 254, 257-258, 461 N.E.2d 916, 919.

Appellant argues last that the elevator certificate issued five weeks earlier created a presumption that the elevator was safe. Appellant adds that the post-accident inspection by the Department of Industrial Relations confirmed this conclusion. This presumption, however, is not irrebutable. The certificates may have indeed created a presumption that the doors could not be opened absent the car. The fact remains, however, that the doors did open without the car there. Any presumption was thus rebutted.

Accordingly, we find some evidence of an interlock defect. Under Ohio Adm. Code 4121:1-1-04(C)(4), however, the emergence of a defect subsequent to inspection is insufficient to establish VSSR liability. It must also be shown that the employer knew of the defect. Some evidence supports this necessary finding as well.

Among other evidence, the commission cited the police reports as evidence of notice. The appellate court found that the police report "coupled with the maintenance supervisor's (Wilson's) statement that the elevator was 'in normal working order' gives rise to a reasonable inference that the condition was 'evident' prior to the fall * * *." We concur.

Accordingly, the judgment of the court of appeals is affirmed.

Judgment affirmed.

A.W. Sweeney, Douglas, Resnick and F.E. Sweeney, JJ., concur.

Moyer, C.J., Wright and Pfeifer, JJ., dissent.