THE STATE EX REL. THOMSON NEWSPAPERS, INC., APPELLANT,
*v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Thomson Newspapers, Inc.
v. Indus. Comm.* (1994), 70 Ohio St.3d 266.]

(No. 93–1299—Submitted June 29, 1994—Decided September 14, 1994.)

268

Baughman & Associates Co., L.P.A., R. Patrick Baughman, James V. Weixel, Jr., and Alys Portman Smith, for appellant.

Lee Fisher, Attorney General, and Jetta Mencer, Assistant Attorney General, for appellee Industrial Commission.

---

Per Curiam.   Ohio Adm.Code 4121:1–1–04(C)(4) provides:

"(C) Between inspections by or on behalf of the authorized public agency, the employer shall promptly correct any operational deficiency that becomes evident in any one of the following controls, gates, devices or interlocks:

" * * *

"(4) The hoistway door interlocks that operate to remain closed at all times when the car is away from the landing and that operate to prevent the hoistway doors from being opened from outside the hoistway while the car is away from the landing[.]"

Appellant urges that there is no evidence that the hoistway door interlocks were defective.  Alternatively, it claims that there is no evidence that any defect was evident to appellant since the last inspection took place.  We disagree.

The circumstances of decedent's death are foggy.  It is known only that a gate was partially open, thereby exposing the elevator shaft, and that claimant was found at its bottom.  Evidence also indicates that decedent, for reasons unknown, had previously left gates open.  All, therefore, agree that decedent himself raised the gate and then fell into the shaft.

The commission held that had the hoistway lock been working properly, the gate could not have been raised while the car was away from the landing.  Citing State ex rel. Jeep Corp. v. Indus. Comm. (1989), 42 Ohio St.3d 83, 537 N.E.2d 215, appellant responds that it is not an absolute guarantor of either its employees' safety or of the infallibility of a given safety device.  Appellant argues that it should not be penalized when a claimant takes extraordinary measures to force an interlocked gate to open.

Appellant's argument might be persuasive if the commission had found that decedent employed extraordinary effort to defeat the lock.  To the contrary, it determined that, based on police reports, the gates could be opened without any

difficulty. This evidence supports a finding, not that the lock was working and circumvented, but that the lock was not working at all.

Appellant attacks the police statements as fatally flawed, since they do not identify where the elevator car was in relation to the gate when the officers tested the gates. Obviously, if the car was at the gate landing, the gate would readily open, eroding the relevance of the officers' findings. Logic defeats appellant's position.

Admittedly, the reports do not expressly indicate where the car was when the officers tested the gates. However, for decedent to have fallen to the shaft's bottom from the middle or bottom level, the car necessarily had to have been above him. This coincides with Wilson's statement that the car was at the top level when he left. Dale, moreover, could not have seen decedent's body from mid-level unless the car was above him.

So, too, with the police reports. The officers could not have photographed the pit from the mid and lower levels with the car in the way. The report also states that the gates were checked contemporaneously with the photographs. From these facts, one inference emerges—that the gates were easily raised with the car absent.

Consistent with its emphasis on decedent's actions, appellant suggests that decedent's conduct constituted a deliberate circumvention of the safety device so as to insulate appellant from VSSR liability. This claim fails. Clearly an employee's conduct can foreclose VSSR liability. For example, if an employer complies with a specific safety requirement and the claimant unilaterally circumvents the device, VSSR liability is avoided. *State ex rel. Cincinnati Drum Serv., Inc. v. Indus. Comm.* (1990), 52 Ohio St.3d 135, 556 N.E.2d 459; *State ex rel. Cotterman v. St. Marys Foundry* (1989), 46 Ohio St.3d 42, 544 N.E.2d 887; *State ex rel. Frank Brown & Sons, Inc. v. Indus. Comm.* (1988), 37 Ohio St.3d 162, 524 N.E.2d 482. This defense, however, is predicated on a finding that, before the claimant's intervention, the specific safety requirement had been satisfied.

This was not found by the commission in this case. When it concluded that the officers could easily open the hoistway gate absent the car, it found that the interlocks did not comply with the specific safety requirement. The necessary prerequisite to consideration of decedent's conduct does not, therefore, exist.

Decedent did not use common sense in leaving the gate open. However, it is precisely that kind of lapse in judgment against which specific safety requirements are designed to protect. As *Cotterman* observed, specific safety requirements are " 'intended to protect employees against their own negligence and folly as well as to provide them a safe place to work.' " 46 Ohio St.3d at 47, 544 N.E.2d at 892, quoting *State ex rel. United States Steel Corp. v. Cook* (1983), 10 Ohio App.3d 183, 186, 10 OBR 254, 257–258, 461 N.E.2d 916, 919.

Appellant argues last that the elevator certificate issued five weeks earlier created a presumption that the elevator was safe. Appellant adds that the post-accident inspection by the Department of Industrial Relations confirmed this conclusion. This presumption, however, is not irrebuttable. The certificates may have indeed created a presumption that the doors could not be opened absent the car. The fact remains, however, that the doors *did* open without the car there. Any presumption was thus rebutted.

Accordingly, we find some evidence of an interlock defect. Under Ohio Adm.Code 4121:1-1-04(C)(4), however, the emergence of a defect subsequent to inspection is insufficient to establish VSSR liability. It must also be shown that the employer knew of the defect. Some evidence supports this necessary finding as well.

Among other evidence, the commission cited the police reports as evidence of notice. The appellate court found that the police report "coupled with the maintenance supervisor's (Wilson's) statement that the elevator was 'in normal working order' gives rise to a reasonable inference that the condition was 'evident' prior to the fall * * *." We concur.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

A.W. SWEENEY, DOUGLAS, RESNICK and F.E. SWEENEY, JJ., concur.

MOYER, C.J., WRIGHT and PFEIFER, JJ., dissent.