DECISION
Relator, Clarence Cooper, has filed an original action in mandamus requesting this court to issue a writ of mandamus to order respondent, Industrial Commission of Ohio, to vacate its order that denied relator's application for additional compensation based on a violation of a specific safety requirement and to issue a new order that grants such compensation.
This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate decided that a writ of mandamus should be denied. Relator has filed objections to the magistrate's decision.
In his objections, relator repeats the arguments originally submitted to the magistrate that the commission improperly refused to allow relator to present hearsay evidence while accepting such evidence from the employer. These arguments were fully considered and correctly rejected by the magistrate. The magistrate found that, some months before the hearing, the employer, in compliance with the Ohio Administrative Code, properly submitted written and signed accident reports, as well as a notarized affidavit, whereas relator attempted to provide hearsay evidence at the time of the hearing. There was no proffer as to the content of the statements sought to be introduced by relator, so we cannot determine whether such statements would have had an impact on the outcome of the hearing. Last, we note that relator admitted he failed to set the handbrake on the truck that injured him.
Upon a review of the magistrate's decision and an independent review of the file, this court adopts the magistrate's decision as its own for the reasons set forth therein. Relator's objections to the magistrate's decision are overruled and the requested writ of mandamus is denied.
Objections overruled, writ of mandamus denied.
TYACK, P.J., and KLATT, J., concur.
 APPENDIX A IN MANDAMUS
Relator, Clarence Cooper, filed this original action asking the court to compel respondent Industrial Commission of Ohio to vacate its order denying additional compensation based on the employer's violation of a specific safety requirement ("VSSR") and to issue an order that grants compensation, or, in the alternative, an order that complies with applicable law.
Findings of Fact:
1. In January 1998, Clarence Cooper ("claimant") was employed by respondent United Parcel Service as a journeyman mechanic.
2. On January 8, 1998, claimant was repairing vehicles in the automotive yard. The employer provided a truck to travel from vehicle to vehicle. The truck, which was equipped with a manual transmission and a parking brake, was used only in the yard and not licensed for public roads. The truck was referred to as Service Car No. 66234.
3. Claimant drove the truck to his first repair job, and he left the engine running because he wanted to use its lights for illumination. The terrain sloped, and he set the parking brake.
4. After completing the repair, claimant drove the truck back to its usual parking place, on an incline in front of a loading dock. The parties dispute whether claimant properly set the parking brake.
5. Claimant walked in front of the truck. It rolled toward him and pinned his left leg against the dock, causing injuries to the leg.
6. The first person to arrive was Thomas Tarallo, who pushed the truck back sufficiently for claimant to pull his leg out. Tarallo then helped claimant into the shop.
7. Next, Cary Hudson, a supervisor, arrived. According to Hudson, he asked what happened, to which claimant replied, "I must not of got the emergency brake tight enough on the car." After the rescue squad left, Hudson went to the truck with two employees, Jim Nevers and Paul Thomas. The front bumper was against the dock. The transmission was in neutral and the parking brake was set. They started the truck, tested the parking brake, and found it working. The next day, Hudson provided a handwritten list of his recollections. He also provided a typewritten, signed narrative.
8. On January 9, 1998, John Rodebaugh and Gene Magrum visited claimant in the hospital. According to Mr. Magrum's statement, they asked claimant what happened, and he said that the only thing he could think of was that he didn't set the parking brake tight enough.
9. On January 12, 1998, John Rodebaugh provided a report stating that, on the morning of January 9, 1998, he and Gene Magrum tested the parking brake on the truck along with George Reinhart, an hourly mechanic. Rodebaugh described various tests they did. The drum of the parking brake was dry and clean. Driving the truck toward the dock where claimant was injured, they applied the parking brake while the truck was still rolling, and the brake brought the truck to a complete stop. If they tried to drive the truck in second gear with the parking brake on, the truck stopped and the engine died. In first gear, they were able to force the truck to move forward. When the truck was parked, it was possible to push it for a few inches before the parking brake prevented further motion.
10. The workers' compensation claim was allowed for the leg injuries. Claimant also filed a VSSR application alleging that the employer violated Ohio Adm. Code 4121:1-5-13, including division4121:1-5-13(F)(1)(g).
11. In March 2000, Gene Magrum, a supervisor in the automotive department, provided a sworn statement. He stated that, on January 9, 1998, he inspected the truck with John Rodebaugh and George Reinhart, a journeyman mechanic with thirty-three years of experience. They found the parking brake working properly. They attempted to reproduce the accident but could not. On the same incline where the accident occurred, the truck would not roll forward with the brake properly set. Magrum stated that all the components of the parking brake system were working properly and free of defect. He noted that, after the accident, Cary Hudson advised that he had also checked the brake and found it working.
12. The company's records show numerous entries for maintenance and repairs to the truck between March 1996 and January 1998, including the following:
(a) In March 1996, unspecified work was done on the park brake handle, with additional work on it in April 1996;
(b) On June 28, 1996, the truck had a state inspection described on the form as "STATE INSP WITH WHEE." The odometer registered 91,360 miles.
(c) In July 1996, work was done on the "park brake band."
(d) On August 26, 1996, a "B-PMI FAI" was completed, which consisted of preventive inspection and maintenance. The odometer registered 91,545 miles. According to claimant's testimony, the B-PMI was a thorough inspection and maintenance to make sure that "everything" was functional.
(e) In November 1996, an "A-PMI" was completed, which consisted of preventive inspection and maintenance. According to claimant's testimony, the A-PMI was a less extensive inspection/maintenance than the "B-PMI." With regard to the parking brake, the A-PMI involved lubrication of the cable and swivel, and checking that "the thing moved up and down."
(f) in February 1997, an "A-PMI O F" was completed.
(g) In May 1997, another A-PMI was completed.
(h) On July 2, 1997, a state inspection was completed.
(i) In July 1997, another A-PMI was completed.
(j) On September 9, 1997, a state inspection was done, which was described as "STATE INSP NO WHEEL P." The odometer registered 93,385.
(k) On October 21, 1997, another A-PMI was completed. As of the October 1997 inspection/maintenance, the truck's odometer registered 93,710.
(l) On December 29, 1997, the odometer registered 94,897, and another A-PMI was completed.
13. In October 2000, a hearing was held on the VSSR application. Various witnesses testified as to the operation of the brake system. Claimant argued that the truck was not properly maintained because there had been no B-PMI inspection/maintenance for more than a year. At one point during the hearing, claimant attempted to testify about things that people had told him about this truck and other trucks. The hearing officer sustained objections and did not permit claimant to narrate the stories that others had told him.
14. In December 2000, the commission denied the VSSR application:
 After reviewing all the evidence on file-affidavits of Mr. Gene Magrum, and Mr. Clarence Cooper, signed statements of Mr. Cary Hudson and Mr. John Rodebaugh-and considering the testimony of the claimant and Mr. Gene Magrum, it is the order of the Staff Hearing Officer that the application of Violation of a Specific Safety Requirement is denied * * *.
* * *
 O.A.C. 4121:1-5-13 is the safety regulation that pertains to motor vehicles, mobile mechanized equipment and marine operations.
* * *
 The record shows that the claimant is a journeyman mechanic and his job consisted of repairing semi-trailers. He has been employed with the employer for 15 years. The claimant on the day of the accident was driving a yellow service package truck. The truck is used by the mechanics and other personnel to go from place to place in the yard. The truck is an older vehicle that is taken out of service for use on the highways because of its age. Even though it is used only in the service yard, it is maintained and serviced like any other vehicle. Mr. Gene Magrum testified to this fact, and maintenance service records corroborate this. He stated that the service trucks are regularly maintained, by mileage and by regularly maintenance after so many months if the vehicle does not meet mileage requirements for maintenance.
 The claimant stated that he drove the service vehicle to the last docks in the yard. He parked the service vehicle and fully engaged the parking brake and exited the truck.
 O.A.C. 4121:1-5-13(f)(g) powered industrial trucks states "employees shall not be required to operate any truck that is not equipped with an adequate,_properly maintained braking _system."
 The Staff Hearing Officer finds that the employer did not violate this safety regulation. The Staff Hearing Officer finds that evidence on file show that the employer properly maintained the braking system. The Staff Hearing Officer further finds that the claimant failed to properly engage the braking system and this failure to properly engage the braking system was the proximate cause of his accident.
 The claimant alleged that the employer failed to maintain a properly maintained vehicle that he fully engaged the brakes on the service vehicle and that the brakes and the vehicle rolled forward pinning him against the dock.
 The record shows that the employer regularly scheduled maintenance on all its service vehicles. In fact, the employer made sure the vehicles passed the state inspection. Under this inspection, the vehicle is checked completely, not just the brakes but also the engine, clutch and repairs are made if necessary. The records (PMI) show that preventative maintenance inspections were performed on this vehicle on July 17, 1997 and September 9, 1997 and December 9, 1997 and there is no indications that there was any problems with the brakes.
 The record also show that the morning after the accident Mr. Cary Hudson, George Reinhart, Gene Magrum and John Rodebaugh, experienced journey mechanics, tested the quality of park brake operation and found it to be in working order.
 The record shows that after the accident the claimant told Mr. Cary Hudson before the ambulance came that "I must not have gotten the emergency brake tight enough on the car. He also told Mr. Gene Magrum and John Rodebaugh who visited him in the hospital that he did not set the parking brake tight enough.
 Evidence on file indicate that part of the operation of setting the brake requires the operator to set the tension in the brakes by turning a knob and if the tension is not set tight the brakes are not set tight. The operators are instructed to make sure that the tension knob is set tight each time the brake is engaged. This procedure is required each time the vehicle is started, and stopped. The knob has to be adjusted. If a person fails to adjust the knob then the brakes are not set tight and the vehicle could move.
 In this case the Staff Hearing Officer finds that the claimant did not set the tension knob tight and his failure to do so caused the accident. The Staff Hearing Officer further notes that the claimant testified that the drivers do not set the tension knob all the time because it is an inconvenience.
16. Rehearing was denied.
Conclusions of Law:
Claimant argues that the commission abused its discretion in denying his VSSR application. The applicable law is set forth in numerous judicial decisions, including State ex rel. Buehler Food Markets, Inc. v. Indus. Comm. (1980), 64 Ohio St.2d 16; State ex rel. Cotterman v. St. Marys Foundry (1989), 46 Ohio St.3d 42; and State ex rel. Watson v. Indus. Comm. (1986), 29 Ohio App.3d 354. In brief, the claimant has the burden of establishing that the specific safety requirement was applicable, that it was violated, and that the violation was the cause of the occupational illness or injury. State ex rel. Commercial Lovelace Motor Freight, Inc. v. Lancaster (1986), 22 Ohio St.3d 191, 193. Because a VSSR award is a punitive, the specific safety requirement must be construed in favor of the employer. State ex rel. Burton v. Indus. Comm. (1989), 46 Ohio St.3d 170.
In the present action, the parties agree that the employer was required to comply with Ohio Adm. Code 4121:1-5-13(F)(1)(g), which provides as follows: "Employees shall not be required to operate any truck that is not equipped with an adequate, properly maintained braking system." The commission determined that claimant did not prove a violation, and claimant contends that this was an abuse of discretion.
The evidence before the commission was diverse. There was evidence that the truck's brakes had been extensively inspected within 3,400 miles/17 months of the accident. Less extensive inspection/maintenance was provided at more frequent intervals. The record included evidence that the parking brake held properly prior to the accident (when claimant left the truck running and used its lights for illumination), and also included evidence that the brake worked properly after the accident (when tested by Messrs. Hudson, Nevers and Thomas, and also when tested by Messrs. Magrum, Rodebaugh and Reinhart). In contrast, claimant testified that he set the brake properly but it failed to hold the truck.
Claimant contends that there was "no evidence" before the commission that the truck was "properly maintained." In this regard, however, the magistrate notes that there was documentary and testimonial evidence regarding the extent and frequency of maintenance. Claimant had the burden of proving that this level of maintenance was a violation of the code.
Neither party presented evidence regarding recognized standards for maintaining brakes. Claimant essentially argues that, in order to maintain the vehicle "properly," the employer was required to perform a "B-PMI" inspection and maintenance more frequently. Thus, claimant argues in effect that the commission was required to find, as a matter of law, that the employer violated Ohio Adm. Code 4121:1-5-13(F)(1)(g) when it allowed a vehicle to be operated when complete inspection/maintenance of the brakes was performed more than 3,300 miles ago and/or more than 16 months ago.
In the proceedings before the commission, claimant presented no specific maintenance standards that the employer violated. Claimant did not present evidence of a malfunctioning part or a worn part that broke, causing the accident. Given claimant's burden of proof, the commission was within its discretion to conclude that the truck's maintenance was proper. The magistrate finds no abuse of discretion in the commission's determination that there was no violation of a specific safety requirement by the employer.
In its order, the commission could have ceased its discussion upon concluding that there was no violation. When there is no violation of a specific safety requirement, there is no need to discuss causation because any other error or negligence by the employer or the employee is not relevant. In the subject order, however, the commission proceeded to state a finding as to the cause of the accident, concluding that, although claimant set the brake, he did not set it properly.
The magistrate recognizes that mere error or negligence by a worker does not bar a VSSR award. E.g., Cotterman, supra. However, the worker's conduct does not entitle him to an award. In order to impose a VSSR award, it is necessary to find a violation of a specific safety requirement by the employer. Here, the commission made a finding, within its discretion, that there was no violation, and, therefore, the issue of claimant's own mistake, if any, was moot. The commission's choice to address a moot point was not, in and of itself, an abuse of discretion. The magistrate notes, however, that the commission was within its discretion to conclude that the accident was caused by a failure of the driver to set the brake properly, given evidence that the brake was in working order before and after the accident.
Last, claimant contends that he was treated differently, and hence unfairly, in regard to hearsay evidence. However, on review of the record, the magistrate finds no inequitable application of evidentiary principles. The employer submitted written accident reports from Cary Hudson and Thomas Tarallo (written within hours of the accident), a written accident report from John Rodebaugh (written within four days of the accident), and the notarized affidavit of Gene Magrum (sworn by a witness who appeared and testified at the hearing). Claimant states that when he tried, during his testimony, to repeat stories that had been told to him, he was not permitted to do so.
The magistrate finds no inequity or abuse of discretion. The employer filed written accident reports, all of which were signed. The employer also filed a list of written notations from Cary Hudson, which were unsigned but consistent with his typed, signed report. Gene Magrum's March 2000 affidavit was notarized, and he testified at hearing, subject to questioning and observation. Further, the employer submitted its documents months before the hearing whereas claimant simply started to give testimony at the hearing about stories that out-of-court witnesses had told him orally. The magistrate concludes that the character and timing of the documents submitted by the employer differed sufficiently from claimant's proposed testimony to justify treating them differently.
Further, the record does not contain a proffer, either during the hearing or in the request for rehearing, as to the substance of the testimony that claimant would have given. However, accepting claimant's allegations in his brief regarding the substance of the testimony, the magistrate nonetheless finds no error or abuse of discretion in excluding the evidence.
Based on the foregoing, the magistrate concludes that claimant has not met his burden in mandamus and recommends that the court deny the requested writ of mandamus.