[Cite as *State ex rel. 506 Phelps Holdings, L.L.C. v. Cincinnati Union Bethel*, 2013-Ohio-388.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO EX REL. 506 PHELPS HOLDINGS, LLC, | : | APPEAL NO.: C-120461 |
| | | TRIAL NOS.:  A-1104189 |
| | : | A-1108167 |
| STATE OF OHIO EX REL. THE WESTERN & SOUTHERN LIFE INSURANCE COMPANY, | | A-1108168 |
| | : | |
| | : | *O P I N I O N.* |
| 506 PHELPS HOLDINGS, LLC, | : | |
| | : | |
| and | : | |
| | : | |
| THE WESTERN & SOUTHERN LIFE INSURANCE COMPANY, | : | |
| | : | |
| Plaintiffs-Relators-Appellees, | : | |
| | : | |
| vs. | : | |
| | : | |
| CINCINNATI UNION BETHEL, | : | |
| | : | |
| Defendant-Respondent-Appellant, | : | |
| | : | |
| and | : | |
| | : | |
| AMIT B. GHOSH, P.E. CHIEF BUILDING OFFICIAL, et al., | : | |
| | : | |
| Defendants-Respondents, | : | |
| | : | |
| and | : | |
| | : | |
| ZONING BOARD OF APPEALS, CITY OF CINCINNATI, et al. | : | |
| | : | |
| Defendants. | : | |
| | : | |
| _____ | : | _____ |

STATE OF OHIO EX REL. 506 PHELPS HOLDINGS, LLC,

STATE OF OHIO EX REL. THE WESTERN & SOUTHERN LIFE INSURANCE COMPANY,

506 PHELPS HOLDINGS, LLC,

  and

THE WESTERN & SOUTHERN LIFE INSURANCE COMPANY,

      Plaintiffs-Relators-Appellees,

  vs.

ANNA LOUISE INN, LIMITED PARTNERSHIP,

  and

ANNA LOUISE INN GP, LLC,

      Defendants-Respondents-Appellants,

  and

AMIT B. GHOSH, P.E. CHIEF BUILDING OFFICIAL, et al.,

      Defendants-Respondents,

  and

ZONING BOARD OF APPEALS, CITY OF CINCINNATI, et al.,

      Defendants.

APPEAL NO.: C-120462
TRIAL NO.: A-1104189
          A-1108167
          A-1108168

_____      _____

| | | |
|---|---|---|
| STATE OF OHIO EX REL. 506 PHELPS HOLDINGS, LLC, | : | APPEAL NO.: C-120474 |
| | | TRIAL NO.: A-1104189 |
| STATE OF OHIO EX REL. THE WESTERN & SOUTHERN LIFE INSURANCE COMPANY, | : | A-1108167 |
| | : | A-1108168 |
| 506 PHELPS HOLDINGS, LLC, | : | |
| and | : | |
| THE WESTERN & SOUTHERN LIFE INSURANCE COMPANY, | : | |
| Plaintiffs-Relators-Appellees, | : | |
| vs. | : | |
| CITY OF CINCINNATI, | : | |
| AMIT B. GHOSH, P.E. CHIEF BUILDING OFFICIAL, | : | |
| WUERSTLE, ZONING HEARING EXAMINER, | : | |
| Defendants-Respondents-Appellants, | : | |
| and | : | |
| ZONING BOARD OF APPEALS, CITY OF CINCINNATI, | : | |
| Defendant-Appellant, | : | |
| and | : | |
| HISTORIC CONSERVATION BOARD, et al., | : | |
| Defendants, | : | |
| and | : | |
| CINCINNATI UNION BETHEL, et al., | : | |
| Defendants-Respondents. | : | |

Civil Appeals From:  Hamilton County Common Pleas Court

Judgments Appealed From Are:  Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal:  February 8, 2012

*Barrett & Weber* and *C. Francis Barrett,* and *White Getgey & Meyer Co., L.P.A.,* and *David P. Kamp,* for Plaintiffs-Relators-Appellees State of Ohio ex rel. 506 Phelps Holdings, LLC, State of Ohio ex rel. Western & Southern Life Insurance Company, 506 Phelps Holdings., LLC, and The Western & Southern Life Insurance Company,

*John P. Curp,* City Solicitor, *Terrance A. Nestor,* Chief Counsel and Assistant City Solicitor, and *Sean S. Suder,* Assistant City Solicitor for Defendants-Respondents-Appellants City of Cincinnati, Amit B. Ghosh, Chief Building Official, Margaret A. Wuerstle, Zoning Hearing Examiner, and Cincinnati Zoning Board of Appeals,

*Manley Burke LPA, Timothy M. Burke* and *Daniel J. McCarthy,* for Defendant-Respondent-Appellant Cincinnati Union Bethel,

*Newman & Meeks* and *Robert B. Newman,* for Respondents-Appellants Anna Louise Inn, Limited Partnership, and Anna Louise Inn GP, LLC.

Please note:  This case has been removed from the accelerated calendar.

**SYLVIA SIEVE HENDON, Judge.**

{¶1}     This case involves the zoning of the Anna Louise Inn, a century-old, five-story building with a basement located at 300 Lytle Street in an area of downtown Cincinnati known as the Lytle Park Historic District.   Defendant-respondent-appellant Cincinnati Union Bethel ("CUB"), a nonprofit corporation, owns the Anna Louise Inn and intends to renovate it.   Respondents-appellants Anna Louise Inn, Limited Partnership, and Anna Louise Inn GP, LLC, (collectively "ALI LP") are affiliated entities of CUB.   CUB intends to transfer the ownership and operation of the Anna Louise Inn to these affiliates upon the completion of the renovations.

{¶2}     Plaintiffs-relators-appellees 506 Phelps Holdings, LLC, and Western & Southern Life Insurance Company (collectively "Western Southern") own property neighboring the Anna Louise Inn.

## I. Background Facts and Procedural History

### A. Anna Louise Inn

{¶3}     When the Anna Louise Inn opened in the early 1900s, CUB used it to provide dormitory style, affordable housing for working-class women.   More recently, CUB has used part of the building as a shelter for homeless families and for its "Off the Streets" program.   CUB has described "Off the Streets" as providing temporary housing and social services for women involved in prostitution.   CUB currently operates "Off the Streets" in the building and will continue to operate "Off the Streets" in the Anna Louise Inn after the renovations.

{¶4}     CUB secured funding to rehabilitate the entire building so that it could continue to operate the existing programs and to add, on the upper floors of the building,

5

housing that met the definition of the term "permanent supportive housing" for funding purposes.[1]

## B. The Building Permit

{¶5}    In April 2010, CUB applied for a building permit to construct 85 apartments and offices on the upper floors of the Anna Louise Inn.   The zoning classification of these 85 apartments and offices is the primary issue in this appeal.

{¶6}    On the building permit application, number 2081P03029, CUB described the current and proposed uses of the Anna Louise Inn using the general Ohio Building Code classifications of "B," for business uses, and "R-1/R-2," for residential use.   CUB did not describe the current and proposed uses of the Anna Louise Inn using the relevant zoning code classifications for buildings located in "DD-B," the applicable zoning district for the property.

{¶7}    Moreover, the plans and supporting documents CUB submitted with the application described the project as multi-family apartments and did not mention that supportive services would be provided to the residents.   Nor did the application contain information about the relationship between the proposed construction and the family shelter or the "Off the Streets" program operating in the building at the time, although the building application did mention that the project was designed for future work to include tenants on the basement level and the first floor.

{¶8}    As part of the city's building permit approval process, the city must review whether the use or uses proposed in the application are permitted under the zoning code.

---

[1] This funding came from different sources, including $12.4 million from the sale of Low Income Housing Tax Credits and Federal Historic Tax Credits and from a development loan from Cincinnati's Home Fund.

## C. Original Action A-1104189

{¶9} After CUB filed the building permit application, but before it was granted, Western Southern filed the case numbered A-1104189 in the Hamilton County Court of Common Pleas. Western Southern alleged that CUB was presently using the Anna Louise Inn as a facility with a continuum of services for its residents, who were primarily homeless recovering female prostitutes, and thus, CUB was using the building as a "special assistance shelter"—a use not permitted of right in the DD-B zoning district, but allowed as a conditional use. Western Southern also characterized CUB's recent use of the building as an expansion of the nonconforming use of the building which the city had not approved, and claimed that the renovations detailed in CUB's building permit application, which would accommodate the expansion of services in the property, would further expand the nonconforming use. Thus, Western Southern alleged that the proposed expansion required the review and approval of respondent-appellant Margaret A. Wuerstle, Zoning Hearing Examiner for the City of Cincinnati.

{¶10} As relief in part, Western Southern asked the trial court to declare that the actions of CUB and the city violated the zoning code, specifically Cincinnati Municipal Code 1447.09, which governs the expansion of nonconforming uses. In conjunction with the request for declaratory relief, Western Southern also sought a writ of mandamus. Western

Southern sought to compel the city and its officials, including Wuerstle and defendant-respondent-appellant Amit B. Ghosh, the "Chief Building Official"[2] for the city, "to perform their clear legal duty to not issue any permits for the property in contravention of the Zoning Code * * * and to perform their clear and legal duty to cause any applications for permits for the subject property to be reviewed and approved in accordance with the provisions of the Zoning Code * * * prior to the issuance thereof."

{¶11}  Western Southern also presented a second claim for declaratory relief, a claim for monetary damages, and claims for both permanent- and temporary-injunctive relief.

### D. Issuance of the Permit and the Appeals to the ZBA

{¶12}  On July 1, 2011, the city issued the building permit, which included a certificate of appropriateness from the Historic Conservation Board.  CUB was required to obtain a certificate of appropriateness as a part of the permit approval process because of the property's location in a historical district.

{¶13}  Western Southern timely appealed the issuance of the building permit and the Historic Conservation Board's issuance of the certificate of appropriateness to the city's Zoning Board of Appeals ("ZBA").

{¶14}  Western Southern amended its complaint in the case numbered A-1104189 to reflect the issuance of the building permit and the certificate of appropriateness, and its appeal of those decisions to the ZBA.  But it maintained that an appeal to the ZBA was not

---

[2] Cincinnati Municipal Code, Art. XXV, Sec. 4, provides, "It shall be the duty of the chief building official to perform building inspection and permitting functions of the city; * * * [and] enforce all zoning regulations []. * * * All duties assigned to the director of the department of buildings and inspections in the Cincinnati Municipal Code shall be assumed by the chief building official, unless otherwise delegated by any provision of the Cincinnati Municipal Code or by ordinance of the council."  Cincinnati Municipal Code 1441.09 provides, "A building * * * or any part thereof, may not be constructed until a building permit has been issued by the Director of Buildings and Inspections.  The director may not issue a building permit for any construction unless the plats, plans, specifications and intended use conform to the Cincinnati Zoning Code."

adequate for several reasons, including that the review by the city was deficient because CUB had not accurately described the existing and proposed uses of the property on its application for the building permit; the city defendants-respondents took no corrective action to address the deficiency; the City Solicitor's Office, which is counsel to the ZBA, had already taken the position that the proposed uses were permitted of right, thereby nullifying any meaningful appeal to the ZBA; and the administrative hearings for nonconforming and conditional uses are required to be held *before* a building permit is issued.

### E. Motion to Dismiss

{¶15} Before the city had issued the permit, the defendants-respondents moved to dismiss the original action as "premature." The trial court, by agreement, did not rule on the motion until August, after Western Southern had amended its complaint to reflect the issuance of the permit. The defendants-respondents then argued, with respect to the claims that are before this court on appeal, that dismissal was warranted because Western Southern had an adequate remedy through the administrative appeal process, which it was actually pursuing. The defendants-respondents also argued that the existing and proposed uses of the Anna Louise Inn, including the 85 apartment units, the offices, and the "Off the Streets" program were allowed by right. The defendants-respondents did not include the family homeless shelter as a use because the shelter ceased operating in the building in the summer of 2011, and CUB has no current plan for it to return.

{¶16} On September 8, 2011, the trial court denied the motion to dismiss, stating that the factual allegations in the complaint must be presumed to be true and, as such, the allegations stated a claim for relief.

### F. ZBA Proceedings

{¶17}  On September 19, 2011, the ZBA heard Western Southern's appeals from the issuance of the building permit and the certificate of appropriateness.  With respect to Western Southern's appeal of the building permit, the ZBA allowed several hours for testimony and argument, and it accepted numerous exhibits, including the permit application and accompanying documents.  The ZBA found that the permit application did not include the "Off the Streets" program.  The ZBA found, however, that the 85 apartments, the offices, and the "Off the Streets" program were three separate uses, each of which was permitted as of right in the zoning district.[3]  The ZBA then affirmed the issuance of the building permit.

{¶18}  The ZBA also affirmed the Historic Conservation Board's issuance of the certificate of appropriateness after a record hearing.  In doing so, the ZBA rejected Western Southern's arguments that the certificate was defective based on procedural irregularities.

{¶19}  Western Southern then separately appealed both ZBA decisions to the court of common pleas pursuant to R.C. Chapter 2506.  These administrative appeals, in the cases numbered A-1108167 (the issuance of the building permit) and A-1108168 (the issuance of the certificate of appropriateness), were consolidated with the original action, A-1104189, by agreed entry.

### G. The Consolidated Cases in the Trial Court

{¶20}  The trial court set the consolidated cases for a hearing in December 2011.  Although CUB and ALI LP, had filed counterclaims in the original action, the parties agreed to limit the December hearing to the resolution of Western Southern's administrative

---

[3] Transitional housing is permitted of right in the zoning district only if the program does not house more than 50 residents.  *See* Cincinnati Zoning Code Schedule 1411-05.

appeals from the ZBA, and its request for a writ of mandamus and for a declaratory judgment concerning the city's zoning code and the use of the property, as set forth in the first and third claims for relief in the original action. And the parties agreed that the court would decide whether the uses proposed for the renovated Anna Louise Inn, including the 85 apartment units and the "Off the Streets" program, are permitted under the Cincinnati Zoning Code.[4]

{¶21} The trial court then granted Western Southern's motion to present additional evidence at the December hearing pursuant to R.C. 2506.03. Menelaos Triantafillou, an urban planning consultant, testified as an expert witness for Western Southern. Gregory Dale, also an urban planning consultant, testified as an expert witness for CUB.

{¶22} Western Southern maintained that the use of the Anna Louise Inn for 85 apartments and the "Off the Streets" program, both for the intended purpose of housing and providing support for homeless, recovering, female prostitutes, plus the mandatory provision of support services for all of these residents, all under the control and direction of CUB, required a finding that the uses had to be considered as an "integrated land use." Western Southern argued that the 85 apartments—the permanent supportive housing— could not qualify as "multi-family housing" under these circumstances and that the "Off the Streets" program did not qualify as "transitional housing." Western Southern thus urged the trial court to reverse the ZBA's decisions and remand the case for proper administrative review.

---

[4] The stipulation provided that the trial court would make a determination concerning "the existing and proposed uses of the Anna Louise Inn," including "(1) what uses are permitted as of right; (2) what uses are not permitted; (3) what uses are conditional uses for which a hearing must be held before the Zoning Hearing Examiner of the City of Cincinnati; (4) what uses are the continuation, expansion, or extension of a nonconforming use for which a hearing must be held by the Zoning Hearing Examiner of the City of Cincinnati; or (5) some combination of (1) through (4) above."

{¶23} The defendants-respondents maintained their position that the proposed uses of the Anna Louise Inn were three separate uses consisting of 85 apartments, CUB's offices, and the "Off the Streets" program for recovering prostitutes. Further, they argued that that the permanent supportive housing units and the "Off the Streets" program did not target "homeless" women and that the supportive services and special services provided were voluntary, such that the women in the permanent supportive housing units did not have to use these services. They contended that the ZBA correctly concluded that all three uses were permitted as of right in the DD-B zoning district. Thus, the defendants-respondents urged the court to affirm the ZBA's decisions.

{¶24} The trial court found that "the uses of the Anna Louise Inn, * * * all under the control and direction of Cincinnati Union Bethel, cannot be separated and must be considered as an integrated land use." The court also held that the 85 apartments did not qualify as "multi-family dwelling" and that the "Off the Streets" program was a "special assistance shelter," not "transitional housing," and, therefore, neither use was permitted as of right in the DD-B district. The court concluded that the 85 apartments, the "Off the Streets" program, and the supportive services, when considered as a whole, could be permitted on the property as a "special assistance shelter," if CUB could obtain a conditional use permit.

{¶25} The court entered judgment for Western Southern on its claim for relief seeking a writ of mandamus ordering the city's chief building official to perform his clear legal duty under the zoning code, and on its claim for relief seeking a declaratory judgment concerning Western Southern's rights under the zoning code. The court then reversed the ZBA's decisions affirming the issuance of the building permit and certificate of appropriateness, and remanded the entire matter for "the proper administrative review and

proper administrative proceedings in accordance with the Court's findings." The court included Civ.R. 54(B) language in its entry, indicating that there was no just cause for delay.

## H. The Consolidated Appeals in this Court

{¶26}  The case numbered C-120461 is CUB's appeal from the trial court's judgment in cases A-1104189, A-1108167, and A-1108168.  The case numbered C-120462 is ALI LP's appeal from the trial court's judgments in all three cases.  The case numbered C-120474 is the city's and its related parties' appeal from the trial court's judgment in all three cases.[5] We consolidated these appeals into the case numbered C-120461 for argument and for our decision.

## II. The Assignments of Error

## A. Mandamus and Declaratory Judgment

{¶27}  In their first assignments of error, the city and CUB focus on Western Southern's mandamus and declaratory judgment claims.[6]   Initially, they argue that the trial court erred when it failed to grant their motions to dismiss the original action.  They argue that the claims alleged were not ripe at the time the motion to dismiss was first filed because the city's administrative bodies had not yet reviewed CUB's permit application.

{¶28}  The city's and CUB's arguments, which accuse Western Southern of filing "prematurely so it could hand select" the trial judge and "forum shopping," implicitly acknowledge that the claims became ripe when the city reviewed CUB's permit application and granted the building permit.  This occurred after the trial court had denied the motions to dismiss on September 8, 2011.  Thus, the city and CUB have failed to demonstrate that the trial court erred when it denied the motions to dismiss on that basis.

---

[5] These parties include Ghosh, Wuerstle, and the ZBA.
[6]  The city also purports to challenge the trial court's denial of the motion to dismiss the claim for injunctive relief, but that part of the trial court's order is not final and appealable, and it is not properly before this court.

{¶29} Next, the city and CUB argue that the trial court erred by issuing the writ of mandamus because Western Southern had an adequate remedy in the ordinary course of law.

{¶30} "Mandamus is a writ * * * commanding the performance of an act which the law specifically enjoins as a duty resulting from an office." R.C. 2731.01. The Ohio Supreme Court has consistently held that for a writ of mandamus to issue, the relator must demonstrate (1) that it has a clear legal right to the relief prayed for, (2) that the respondents are under a clear legal duty to perform the acts, and (3) that the relator has no plain and adequate remedy in the ordinary course of the law. *See, e.g., State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28, 451 N.E.2d 255 (1983). The city's and CUB's arguments address the third element of a mandamus claim.

## I.  Plain and Adequate Remedy at Law

{¶31} A trial court exceeds its jurisdiction when it allows a writ of mandamus to issue if the relator had available a plain and adequate remedy in the ordinary course of law by way of an appeal pursuant to the local zoning code and R.C. Chapter 2506. *See State ex rel. Sibarco Corp. v. Berea*, 7 Ohio St.2d 85, 218 N.E.2d 428 (1966). Generally, the issuance of a building permit is an administrative action for which there is a right to an administrative appeal. *See id.*; Cincinnati Municipal Code Chapter 1449. The respondents-appellants argue that because the city granted the building permit, Western Southern had a plain and adequate remedy to challenge that decision by an administrative appeal to the ZBA and then to the trial court through a R.C. Chapter 2506 appeal.

{¶32} But "[m]andamus is an appropriate remedy where no statutory right of appeal is available to correct an abuse of discretion by an administrative body." *State ex rel. Pipoly v. State Teachers Retirement Sys.*, 95 Ohio St.3d 327, 2002-Ohio-2219, 767 N.E.2d

719, ¶ 14. And the failure to exhaust administrative remedies may be a defense only if there is an effective remedy to afford the relief sought. *State ex rel. Cotterman v. St. Mary's Foundry*, 46 Ohio St.3d 42, 44, 544 N.E.2d 887 (1989).

{¶33} We must determine whether Western Southern had an adequate remedy at law. On its face, Western Southern's complaint for mandamus contains allegations that challenged more than just the issuance of the building permit for the 85 apartment units and offices that CUB included in the building permit application. Western Southern also argued that CUB's existing uses of the Anna Louise Inn, including the "Off the Streets" program, did not comply with the zoning code, and that CUB was attempting to circumvent the zoning regulations by making improvements to a unified facility through phased construction.

{¶34} Western Southern did not have any "decision" to appeal administratively with respect to the zoning classification of the "Off the Streets" program at that point, because no administrative decision had been issued. As noted by the ZBA in its decision, the building permit application did not include the "Off the Streets" program. And the city's own records accompanying the application do not contain any "decision" with respect to the use of the building for "Off the Streets." Thus, Western Southern did not have a "decision" from the city with respect to the "Off the Streets" program to appeal to the ZBA.

{¶35} Therefore, mandamus would have appeared to be an appropriate remedy to the trial court because of the limited scope of the building permit application. *See State ex rel. Pipoly,* 95 Ohio St.3d 327, 2002-Ohio-2219, 767 N.E.2d 719, at ¶ 14 (holding that [m]andamus is an appropriate remedy where no statutory right of appeal is available to correct an abuse of discretion by an administrative body"); *St. Mary's Foundry*, 46 Ohio St.3d at 44, 544 N.E.2d 887; *Kaufman*, 26 Ohio St.2d 217, 271 N.E.2d 280 (holding that the

failure to exhaust administrative remedies may be a defense only if there is an effective remedy to afford the relief sought).

{¶36} However, the facts of this case are unusual. The ZBA made its own determination that "Off the Streets" constituted "transitional housing" under the Cincinnati Zoning Code, and that it was permitted as of right. Thus, the ZBA had made a determination concerning the "Off the Streets" program that Western Southern could and, in fact, did, appeal to the court of common pleas under the statutory provision for administrative appeals. Thus, after the ZBA had issued its decision, a writ of mandamus was not an appropriate remedy.

## 2. Declaratory Judgment

{¶37} The city and CUB also argue that the trial court erred by granting judgment to Western Southern on its third claim for relief, in which Western Southern sought a declaration that the uses at the Anna Louise Inn involved the expansion of a nonconforming use and violated Cincinnati's zoning code. In support of this argument, the city and CUB cite *Gordon v. City of Green*, 113 Ohio App.3d 729, 682 N.E.2d 1 (9th Dist.1996).

{¶38} In *Green*, landowners desiring to build additional overnight shelters on their property to expand their kennel business sought a declaratory judgment that the construction would not be an expansion of a nonconforming use that required a variance. *Id.* at 731. The landowners never actually applied for the variance or a building permit, but the city stipulated that if the landowners had submitted a proposal to the Zoning Board of Appeals for the construction, the board would have rejected it. *Id.* at 731-732. The trial court denied the relief requested upon determining that the construction would expand a nonconforming use, which required a variance.

{¶39} The court of appeals held, however, that the trial court should have dismissed the appeal because the availability of administrative remedies precluded the availability of declaratory relief, where the landowners were not challenging the validity or constitutionality of a zoning ordinance. *Id.* at 733. In other words, the landowners could not "circumvent the administrative process by stipulating that the result of the process would have been unfavorable to them." *Id.*

{¶40} Undoubtedly, the exhaustion of administrative remedies is generally a prerequisite to the filing of a declaratory judgment action that addresses the application of a zoning ordinance but does not challenge the constitutionality of the ordinance. *Jones v. Village of Chagrin Falls*, 77 Ohio St.3d 456, 674 N.E.2d 1388 (1997). Western Southern argues, however, that this rule does not apply where the resort to administrative remedies would be unduly burdensome or wholly futile. *See Karches v. City of Cincinnati*, 38 Ohio St.3d 12, 17, 526 N.E.2d 1350 (1988).

{¶41} As we have already explained, in discussing the appropriateness of mandamus relief, Western Southern had an available remedy to challenge the ZBA's determinations regarding the zoning classification of the 85 apartment units, the offices, and the "Off the Streets" program in a R.C. Chapter 2506.03 appeal. Western Southern actually prevailed in its appeal to the trial court, undermining its argument that the resort to administrative remedies was unduly burdensome or a vain act. Thus, the trial court's issuance of the writ of mandamus and its award of declaratory relief was not proper. Accordingly, we sustain in part the city's and CUB's first assignments of error.

### III. The Admission of Additional Evidence

{¶42} In their second assignments of error, the city and CUB argue that the trial court erred by considering additional evidence in the administrative appeals. The trial

court, after consolidating the two administrative appeals with the original action, granted Western Southern's motion, filed under R.C. 2506.03, to present additional evidence. The trial court did not explain the basis of the decision.

{¶43} R.C. 2506.03 provides that an appeal under R.C. 2506.01 "shall proceed as in the trial of a civil action, but the court shall be confined to the transcript [from the administrative hearing] * * * unless it appears, on the face of the transcript or by affidavit filed by the appellant," that certain enumerated exceptions apply. These R.C. 2506.03 exceptions include:

(1) The transcript does not contain a report of all evidence admitted or proffered by the appellant.

(2) The appellant was not permitted to appear and be heard in person, or by the appellant's attorney, in opposition to the final order, adjudication, or decision, and to do any of the following:

(a) Present the appellant's position, arguments, and contentions;

(b) Offer and examine witnesses and present evidence in support;

(c) Cross-examine witnesses purporting to refute the appellant's position, arguments, and contentions;

(d) Offer evidence to refute evidence and testimony offered in opposition to the appellant's position, arguments, and contentions;

(e) Proffer any such evidence into the record, if the admission of it is denied by the officer or body appealed from.

(3) The testimony adduced was not given under oath.

(4) The appellant was unable to present evidence by reason of a lack of the power of subpoena by the officer or body appealed from, or the refusal, after

request, of that officer or body to afford the appellant opportunity to use the power or subpoena when possessed by the officer or body.

(5) The officer or body failed to file with the transcript conclusions of fact supporting the final order, adjudication, or decision.

{¶44} The Ohio Supreme Court has recognized that R.C. 2506.03 "makes liberal provision for the introduction of new or additional evidence." *Cincinnati Bell, Inc. v. Glendale*, 42 Ohio St.2d 368, 370, 328 N.E.2d 808 (1975). We review the trial court's decision to allow the introduction of additional evidence under R.C. 2506.03 under an abuse of discretion standard. *See Saeed v. Cincinnati*, 1st Dist. No. C-030854, 2004-Ohio-3747, ¶ 18.

{¶45} In this case, Western Southern moved to present additional evidence for several reasons, including that some testimony adduced was not given under oath, the exception in R.C. 2506.03(A)(3). Western Southern explained that the chairman of the ZBA had allowed the executive secretary of the ZBA to make unsworn statements on the record about the availability of public records to rebut the testimony of one of Western Southern's witnesses.

{¶46} We agree with Western Southern that this challenge met the exception set forth in R.C. 2506.03(A)(3), and that the facts of the exception were demonstrated on the face of the transcript. Because of this, we cannot say that the trial court's decision to allow additional evidence was unreasonable, arbitrary, or unconscionable. *See Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶47} We conclude, therefore, that the trial court did not abuse its discretion by allowing additional evidence at the December 2011 hearing. *See Saeed* at ¶ 18. Accordingly, we overrule the city's and CUB's second assignments of error.

## IV. Standard of Review of an Administrative Decision

{¶48}  In its third and fourth assignments of error, the city argues that the trial court erred by failing to apply the correct standard of review in an administrative appeal and that it misapplied the zoning code.  CUB raises a similar argument in its third assignment of error. The crux of the appellants' argument is that the trial court erred by rejecting the ZBA's determination that the 85 apartments, the offices, and the "Off the Streets" program were three separate uses, each of which was permitted as of right in the zoning district.

{¶49}   The standard of review to be applied by the court of common pleas in R.C. Chapter 2506 administrative appeals is set forth in R.C. 2506.04.  The common pleas court must "weigh the evidence in the record, and whatever additional evidence may be admitted under R.C. 2506.03, to determine whether there exists a preponderance of reliable, probative and substantial evidence to support the agency decision." *Dudukovich v. Lorain Metro. Hous. Auth.*, 58 Ohio St.2d 202, 207, 389 N.E.2d 1113 (1979).

{¶50}  The court must also determine whether the decision is "unconstitutional, illegal, arbitrary, or capricious." R.C. 2506.04.   The court may not blatantly substitute its judgment for that of the agency, especially in areas of administrative expertise*.  See Dudukovich* at 207.   If a preponderance of reliable, probative and substantial evidence exists, and the decision is otherwise lawful, the court of common pleas must affirm the agency's decision.  *Id.*  If not, the court may reverse, vacate, modify, or remand.  R.C. 2506.04

{¶51}  But this court's standard of review is "more limited in scope." *Henley v. Youngstown*, 90 Ohio St.3d 142, 147, 735 N.E.2d 433 (2000).  Our inquiry is limited to questions of law, such as whether the trial court correctly applied the zoning code or whether there existed a preponderance of reliable, probative, and substantial evidence to

support the trial court's decision. *See id.; Kisil v. Sandusky*, 12 Ohio St.3d 30, 34, 465 N.E.2d 848 (1984). This court is not permitted to weigh the evidence. *Henley* at 147, citing *Kisil* at 34.

{¶52} The appellants first argue that we must reverse the trial court's decision because the ZBA's decision was reasonable and not an abuse of discretion. But the scope of our review "d[oes] not permit [us] to consider whether the board's decision was reasonable and not an abuse of discretion. That was for the court of common pleas alone to decide." *Reed v. Rootstown Twp. Bd. of Zoning Appeals*, 9 Ohio St.3d 54, 59, 458 N.E.2d 840 (1984). In this case, the court of common pleas accepted additional evidence, thereby affecting its duty to give due deference to the administrative resolution of evidentiary conflicts. It acted as a finder of fact in regard to the new evidence. *Sottile v. Amberley Village Tax Bd. of Review*, 146 Ohio App.3d 680, 2001-Ohio-4277, 767 N.E.2d 1212, ¶ 6, citing *Hebeler v. Colerain Twp. Bd. of Zoning Appeals*, 116 Ohio App.3d 182, 186, 687 N.E.2d 324 (1st Dist.1997); *Harvey v. Civil Service Comm.*, 27 Ohio App.3d 304, 306, 501 N.E.2d 39 (1st Dist.1985).

{¶53} Thus, we reject the assignments of error to the extent that the appellants urge this court to apply an erroneous standard of review of the trial court's decision.

{¶54} We now review whether a preponderance of reliable, probative, and substantial evidence exists to support the trial court's decision, and whether the trial court applied the law correctly. *See Henley*, 90 Ohio St.3d at 147, 735 N.E.2d 433; R.C. 2506.04; *Ware v. Fairfax Bd. of Zoning Appeals*, 164 Ohio App.3d 772, 2005-Ohio-6516, 844 N.E.2d 357, ¶ 4 (1st Dist.)

## A. Integration of Uses

{¶55} The city and CUB contend that the trial court, in reversing the ZBA's decision, failed to view the 85 apartment units, the offices, and the "Off the Streets" program as separate uses required under the law. The trial court found "that the uses of the Anna Louise Inn consisting of the 'Off the Streets' program, the 85 units of Permanent Supportive Housing and the support services provided and offered to the occupants of [both], all under the control and direction of Cincinnati Union Bethel, cannot be separated and must be considered as an integrated land use."

{¶56} The trial court based this finding in part on the testimony of Triantafillou, Western Southern's expert on land uses at the hearing before the trial court. Triantafillou explained, with respect to the integration of uses, as follows:

> [E]very land use * * * has certain characteristics. * * * A land use has a primary purpose, so if the primary purpose is there then whatever the other components are in this land use are part of the primary purpose. * * * [F]or example, * * * if you have a retail business of 8[000 to] 10,000 square feet, you can't separate the retail component [in] one part of the building, the storage warehousing in another part of the building, and the office management components in another part of the building * * *. We can't say that one is office, the other one is retail, the other one is warehouse and light industrial. The primary purpose of that business is to sell that particular product, but it needs all the other components in order to do it. So it's an integrated and an integral way of looking at land use.

### 1. *CityLink Center v. City of Cincinnati*

{¶57}   The city and CUB contend that this court rejected the concept of "merged" uses in *CityLink Center v. City of Cincinnati*, 1st Dist. Nos. C-061037, C-061054 and C-061064, 2007-Ohio-5873.

{¶58}   In *CityLink*, a not-for-profit corporation organized by several churches and ministries, sought to purchase property in Cincinnati in an area zoned Manufacturing General ("MG") and to renovate the property to create a " 'centralized hub of services' to assist the low-income population in Cincinnati in becoming more fully contributing members of society."  *Id.* at ¶ 2.  CityLink intended to lease space in a renovated building to four main tenants, operating under separate legal identities with separate governing boards and having independent control over the services provided.  These tenants included (1) Jobs Plus, a job placement and training organization; (2) Crossroads Health Center, a provider of medical care; (3) the Lord's Gym, an organization providing exercise and wellness programs; and (4) City Gospel Mission, a provider of long-term transitional housing for people involved in CityLink's programs.

{¶59}   Prior to purchasing the property, CitiLink applied for a Zoning Certificate of Compliance to use the property "to house 'professional offices, transitional housing, recreational facilities, accessory day care, barber and beauty salons, and a café.' "  The Department of Buildings and Inspections issued the Zoning Certificate of Compliance after determining that the intended uses of the property conformed to the city's zoning code.  *Id.* at ¶ 5.  The city and various allied groups and individuals successfully appealed that determination to the Zoning Board of Appeals, arguing that CityLink Center was a "community service facility," which was not a permitted use in the applicable zoning district. The trial court reversed the ZBA, and this court affirmed the trial court.

{¶60} In affirming the trial court's judgment, we held in part that the use of the land was not transformed into a "community service facility" simply because the various uses were housed under one roof, especially where the evidence demonstrated that each of CityLink's tenants had a "separate legal identity" and a "separate governing board." *Id.* at ¶ 30.

{¶61} Ultimately, we upheld the city's Director of Buildings and Inspections' determination that the proposed uses, individually and as a whole, conformed to the city's zoning code.

{¶62} Although we rejected the city's argument in *CityLink* that the several uses of the building had to be viewed as one, we did not hold that two programs housed in the same building and operated by a single legal identity and governing board should never be viewed as a whole to determine the character of the uses for zoning purposes. *Citylink*, therefore, is not dispositive.

### 2. Lakeshore Properties v. City of Sharonville

{¶63} The city and CUB also argue that the trial court's decision was erroneous under *Lakeshore Properties v. City of Sharonville*, 1st Dist. No. C-000321, 2001 Ohio App. LEXIS 543 (Feb. 16, 2001). That case involved in part whether a trucking company's operation of second trucking center was an illegal extension of a nonconforming use on the property. The trucking company argued that its operation of a trucking facility using 15 trucks to deliver loads with the aid of intermodal containers and providing for the repair of the containers on the southern end of the property involved accessory uses to its trucking facility on the northern end of the property. The city disagreed, believing that the second operation was a second principal use of the property and an illegal extension of a nonconforming use.

{¶64} The trucking company filed a complaint against the city seeking a declaration of its rights under a recent amendment to the Sharonville Zoning Code regarding the use of intermodal containers, and the city counterclaimed. Based on the evidence presented, the trial court determined that none of trucking company's uses at the southern end of the property were incidental to the trucking center on the northern end of the property, which did not use intermodal containers. Therefore, the court ordered that the trucking company cease its operations on the southern end of the property. We affirmed, holding that competent, credible, evidence supported the trial court's pertinent findings.

{¶65} We are not persuaded that our holding in *Lakeshore* renders the trial court's determination in this case erroneous. We merely held that the evidence in that case supported the trial court's determination that there were separate principal uses on the property.

### B. Evidence of Integrated Use

{¶66} In this case, the building plans and specifications and other supporting documents submitted with the building permit application did not address whether the 85 apartments units and the "Off the Streets" program will share entrances, facilities, or personnel. Further, these documents failed to describe which services for the residents of the 85 apartment would be provided on site. Conversely, the "Supportive Services Plan" that CUB submitted to secure renovation funding for the 85 apartment units, as "permanent supportive housing," provides in relevant part:

> This Supportive Service plan will provide a range of services to the tenants of the Anna Louise Inn, which is comprised of 85 affordable housing units, 60 of which will be set aside for permanent supportive housing (PSH). The target population for this project will be single, low-income women who

are homeless or at risk of homelessness. Anna Louise Inn (ALI) has been providing housing and services in this location for over 100 years, more recently * * * we have been providing the more intensive support services [Ohio Housing Financing Agency] requires for Permanent Supportive Housing.

* * *

The Anna Louise Inn is perfectly designed for service provision. The first floor * * * will have a large community meeting space, private meeting spaces, private offices for service coordinator and operations staff, a reception area, and public restrooms.

* * *

The following [existing] services will be available [for our residents]: * * * Case Management Services * * * to coordinat[e] the overall care of our clients and to improve and restore their mental health and overall ability to function within the community; Integrated Dual Disorder Treatment, * * * [a] highly specialized approach us[ing] housing subsidies and an integrated treatment model to address the unique needs of [individuals who are homeless and diagnosed with both mental illness and substance abuse disorders]; * * * Money Management (payee), * * * Off-the-Streets; * * * and Vocational Programs.

* * *

Off-the-Streets (OTS) is a unique and award winning program housed in the first floor of the Anna Louise Inn that will serve as a feeder for the renovated supportive housing that will be housed at ALI. The mission of Off-the-Streets

is to provide comprehensive, wrap-around services that will assist women involved in the sex trade move toward safety, recovery, empowerment, and community reintegration.

{¶67} The record also contains information taken from Cincinnati's "Homeless to Homes" plan, which the city adopted "to ensure single homeless individuals have access to appropriate shelter facilities and comprehensive services which facilitate their movement from shelter to permanent housing." This plan includes the provision of "Permanent Supportive Housing," which it defines as "service-enriched housing where the population of the dwellings must be certified as homeless prior to residing in the units, and where such housing is required by the homeless individual to maintain permanent residency."

{¶68} Finally, other evidence demonstrated that the Anna Louise Inn, including the 85 apartment units and the "Off the Streets" program, was part of the city's Homeless to Homes Plan.

{¶69} CUB presented testimony that purported to minimize the extent and the mandatory character of the supportive services. But the trial court's reasonable determination that "the uses of the Anna Louise Inn * * * cannot be separated and must be considered as a integrated land use" is supported by the law and by the preponderance of the evidence in the record. Therefore, we cannot disturb it.

## C. Remand

{¶70} Although we do not find that the trial court erred in viewing the Anna Louise Inn as a whole, we do sustain in part the city's third and fourth assignments of error, and CUB's third assignment of error, but for a reason different than that presented by the defendants-respondents-appellants.

{¶71} In undertaking the zoning review during the permit application process, the city did not consider the use of the Anna Louise Inn as a whole, integrated unit. Because the trial court found that the uses of the building were integrated, the trial court should have reversed the ZBA's decision affirming the permit and the certificate of appropriateness and remanded the case to the relevant city administrative officials to review the building permit application and determine the zoning classification of the Anna Louise Inn in light of the trial court's finding.

## V. ALI LP's Assignments of Error

{¶72} ALI LP argues in its three assignments of error that the trial court failed to give proper deference to the ZBA's decisions in the administrative appeals. We note that ALI LP was not a party to the administrative appeals, and it never sought to be made a party. Because ALI LP is not an aggrieved "party" from that part of the trial court's judgment, we do not reach the merits of ALI LP's assignments of errors.

## VI. Conclusion

{¶73} We affirm the trial court's judgment reversing the BZA's decisions that affirmed the issuance of the building permit and the certificate of appropriateness, and we affirm the trial court's finding that the Anna Louise Inn must be viewed as a whole for purposes of zoning review. But we vacate the part of the trial court's decision applying the zoning analysis to the 85 apartment units, the offices, and the "Off the Streets" program, and the trial court's grant of the writ of mandamus and declaratory relief.

{¶74} Accordingly, we remand the case to the trial court with instructions to remand the case to the relevant city officials to review the building permit in light of the trial court's finding on the "integrated use."

Judgment affirmed in part, reversed in part, and cause remanded.

**SUNDERMANN, P.J.,** and **DINKELACKER, J.,** concur.

J. HOWARD SUNDERMANN, retired, from the First Appellate District, sitting by assignment.

Please note:

　　The court has recorded its own entry on the date of the release of this opinion.