[Cite as *Phillips Supply Co. v. Cincinnati Zoning Bd. of Appeals*, 2014-Ohio-3203.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| PHILLIPS SUPPLY COMPANY, | : | APPEAL NO. C-130835 |
| | | TRIAL NO. A-1303457 |
| U.S. BANK, N.A., TRUSTEE OF THE | : | |
| CHARLES PHILLIPS IRREVOCABLE | | *O P I N I O N.* |
| TRUST u/a/d 6/1/1964, | : | |
| and | : | |
| DALTON STREET PROPERTIES, | : | |
| LTD., | | |
| | : | |
| Plaintiffs-Appellants, | | |
| | : | |
| vs. | | |
| | : | |
| CITY OF CINCINNATI ZONING | | |
| BOARD OF APPEALS, | : | |
| AMIT B. GHOSH, P.E., | : | |
| CITY GOSPEL MISSION, | : | |
| FOUNDATION OF COMPASSIONATE | : | |
| AMERICAN SAMARITANS, d.b.a. | | |
| LORD'S GYM AND LORD'S PANTRY, | : | |
| and | : | |
| 032811 HOLDINGS, LLC, | : | |
| Defendants-Appellees. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: July 23, 2014

*Buechner Haffer Meyers & Koenig Co., L.P.A.,* and *Peter E. Koenig*, for Plaintiffs-Appellants,

*Terrance A. Nestor*, Interim City Solicitor, and *Marion E. Haynes III*, Chief Counsel, for Defendants-Appellees City of Cincinnati Zoning Board of Appeals and Amit Ghosh,

*Manley Burke L.P.A*, *Timothy M. Burke* and *James M. Cooney*, for Defendants-Appellees City Gospel Mission, Foundation of Compassionate American Samaritans, d.b.a. Lord's Gym and Lord's Pantry, and 032811 Holdings, LLC.

**Please note:  this case has been removed from the accelerated calendar.**

SYLVIA S. HENDON, Judge.

{¶1}     This is the second appeal that has come before this court involving the relocation of a homeless shelter from the Cincinnati neighborhood of Over-the-Rhine to the city's Queensgate area.  The crux of this appeal is the propriety of the city's issuance of building permits for two specific parcels of land in Queensgate that are to be used for the relocation of the homeless shelter and the placement of related social services.

{¶2}     Plaintiffs-appellants Phillips Supply Company, U.S. Bank, N.A., Trustee of the Charles Phillips Irrevocable Trust u/a/d June 1, 1964, and Dalton Street Properties, Ltd. ("Phillips Supply"), are neighboring business and property owners to the proposed relocation site, who are opposed to the homeless shelter's relocation.  Phillips Supply has appealed from the trial court's entry affirming the decision of the Cincinnati Zoning Board of Appeals ("ZBA") that upheld the city's issuance of the building permits.  Because the trial court did not abuse its discretion in upholding the decision of the ZBA, we affirm the judgment of that court.

### Factual Background

{¶3}     Defendant-appellee City Gospel Mission sought to relocate a homeless shelter from Over-the-Rhine to a new facility on the property located at 1805 Dalton Avenue in Queensgate.  On an adjacent property at 1211 York Street, they sought to place related services, including the Exodus Program, the Lord's Gym, the Lord's Pantry, Jobs Plus Employment Network, and City Gospel Mission offices.  Because Queensgate is zoned as MG, manufacturing general, the city had passed a notwithstanding ordinance that approved the operation of a special assistance

shelter on the Dalton Avenue property. Absent this ordinance, the operation of a homeless shelter was not a permitted use in an MG district under the zoning code. Phillips Supply opposed the relocation of the homeless shelter, and it filed suit challenging the city's issuance of the notwithstanding ordinance. The ordinance was upheld by the trial court and affirmed by this court in *State ex rel. Phillips Supply Co. v. City of Cincinnati*, 2012-Ohio-6096, 985 N.E.2d 257 (1st Dist.).

{¶4} After the notwithstanding ordinance was upheld, the city issued building permits for the renovation of the Dalton Avenue property and the construction of a new building on the York Street property. Phillips Supply appealed the issuance of these permits to the ZBA. It argued that the permit for the Dalton Avenue property should not have been issued because the proposed structure's principal use under the zoning code was "religious assembly," which is prohibited in an MG district. And it argued that the permit for the York Street property should not have been issued because that building's proposed use was "community service facility," another prohibited use in an MG district. The ZBA held a hearing concerning the proposed uses for the two properties, and whether those uses complied with the zoning code.

{¶5} Extensive testimony about City Gospel Mission, the homeless shelter, and the related social services that would occupy the York Street property was presented at the hearing, much of which was offered by Roger Howell, the president of City Gospel Mission. City Gospel Mission's purpose is to promote the cause of the Christian religion through social-service-based programs. The organization has operated a homeless shelter since 1924. Testimony indicated that the Dalton Avenue property will contain a chapel that takes up approximately 4.4 percent of the

4

property's square footage, and that the property will offer a daily 45-minute chapel service, although no persons residing in the shelter are required to attend that service. When not being used for religious services, the chapel will serve a multipurpose use.

{¶6} With respect to the social-service programs to be located in the York Street property, the evidence indicated that the Exodus program is a transitional-housing program for men with life-addictive issues. It is a 365-day program that includes spiritual activities. The Lord's Gym is a physical-fitness program for men to help them grow physically as well as spiritually. Similarly, the Lord's Pantry provides a meal to its patrons while also offering prayer and evangelism. The Jobs Plus Employment Network offers a job-readiness training program and assists its participants in finding employment. The agency is guided by Biblical principles, and incorporates those principles into its programs. The York Street property will also contain City Gospel Mission's administrative offices.

{¶7} In its decision, the ZBA determined that the proposed use of the Dalton Avenue property, where the homeless shelter was to be placed, was a "special assistance shelter," and that such a use was permitted by the notwithstanding ordinance. It further determined that the York Street property should be classified as a mixed-use facility, and it considered the individual uses for each proposed tenant of the property. It classified the use of the Exodus Program as "transitional housing," the use of the Lord's Gym as "indoor or small-scale recreation and entertainment," the use of the Lord's Pantry as "eating and drinking establishment/restaurants, limited," the use of the Jobs Plus Employment Network as "personal/instructional service," and the use of City Gospel Mission's offices as

"office." Each of these individual uses was permitted in an MG district. The ZBA stated in its decision that the fact that the proposed tenants of these two buildings were religiously-oriented organizations and that various programs occurring in these facilities had a faith-based element did not transform the principal use of the facilities into "religious assembly." Because all proposed uses for the two properties were permitted by either the zoning code or the notwithstanding ordinance, the ZBA upheld the issuance of the permits.

{¶8} In an administrative appeal under R.C. Chapter 2506, Phillips Supply filed suit against defendants-appellees the City of Cincinnati Zoning Board of Appeals, Amit Ghosh, the chief building official for the city, City Gospel Mission, the Foundation of Compassionate American Samaritans, d.b.a. Lord's Gym and Lord's Pantry, and 032811 Holdings, LLC, the owner of the properties (collectively referred to as "Appellees"). Phillips Supply again argued that the proposed principal use of both properties was "religious assembly," or, in the alternative, that the use of the York Street property was "community service facility," and that both uses were prohibited in an MG district. It additionally asked the magistrate to take judicial notice of certain documents from the Hamilton County Auditor's website indicating that City Gospel Mission had been classified as a church for taxation purposes. These documents had not been made part of the record before the ZBA, but were introduced for the first time in the administrative appeal. The Appellees filed a motion to strike these documents. The magistrate granted the motion to strike, and it affirmed the decision of the ZBA.

{¶9} Phillips Supply filed objections to the magistrate's decision. The trial court sustained an objection to the magistrate's granting of the motion to strike. It

6

held that the magistrate should have taken judicial notice of the documents from the auditor. But the trial court then excluded those same documents as irrelevant. The court overruled all other objections to the magistrate's decision. Phillips Supply has appealed from the trial court's judgment, raising one assignment of error for our review.

### Standard of Review

{¶10} Phillips Supply argues in its sole assignment of error that the trial court erred in affirming the decision of the ZBA.

{¶11} In an administrative appeal, this court's review is highly deferential to the trial court. We are not permitted to independently weigh the evidence in the record. Our review is limited to questions of law, and to determining whether the trial court committed an abuse of discretion when weighing the evidence. *See Citylink Center v. City of Cincinnati*, 1st Dist. Hamilton Nos. C-061037, C-061054 and C-061064, 2007-Ohio-5873, ¶ 12. An abuse of discretion "connotes more than an error of law or of judgment; it implies an unreasonable, arbitrary or unconscionable attitude on the part of the court." *Pembaur v. Leis*, 1 Ohio St.3d 89, 91, 437 N.E.2d 1199 (1982). The fact that this court may have reached a different conclusion than the trial court or the ZBA is immaterial. We may not substitute our judgment for that of the trial court or the ZBA. *See Henley v. City of Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147, 735 N.E.2d 433 (2000).

*Dalton Avenue Property*

{¶12} Phillips Supply first contends that the trial court erred by classifying the principal use of the Dalton Avenue property as "special assistance shelter" and not "religious assembly."

{¶13} Cincinnati Municipal Code 1401-01-S11 defines a special assistance shelter as "a facility for the short-term housing of individuals who are homeless and who may require special services." Religious assembly is defined as "an establishment for religious worship and other religious ceremonies, including religious education, rectories and parsonages, offices, social services, columbaria and community programs." *See* Cincinnati Municipal Code 1401-01-R7. When determining that the Dalton Avenue property's principal use was special assistance shelter, the ZBA stated that

> The facility will provide temporary emergency shelter and associated social services to men who are homeless * * *. The evidence of a daily 45-minute religious service in the Shelter's multipurpose space does not convert the Dalton Property into "an establishment for religious worship and other religious ceremonies," and does not support a categorization of the principal use of the Dalton Property as Religious Assembly. [City Gospel Mission] and [the Foundation of Compassionate American Samaritans] are self-acknowledged religiously-oriented organizations that aim to meet the mental, physical, economic, educational, and social, as well as the spiritual needs of the Shelter guests. The fact that these organizations count religion as one of the inspirations or motivations for operating their

8

social service programs on the Properties does not convert the uses into Religious Assembly uses.

{¶14} The record is replete with evidence that City Gospel Mission is a religiously-focused organization. Motivated by this religious focus, the organization has, and will continue to, operate a homeless shelter. The purpose of the homeless shelter is to improve all aspects of its residents' lives to help them become more productive members of society. The programming has both spiritual and secular elements, but, as recognized by the ZBA, City Gospel Mission's religious motivation and the small spiritual portion of its programming do not convert its primary use into religious assembly. This is a zoning case. Generally, zoning laws may regulate the use of the land, not the identity of the users. *See Citylink Center*, 1st Dist. Hamilton Nos. C-061037, C-061054 and C-061064, 2007-Ohio-5873, at ¶ 13.

{¶15} The ZBA considered the fact that there will be a religious element to the homeless shelter when determining the principal use of the building for zoning purposes. The services to be offered by the homeless shelter clearly fall within the zoning code's definition of special assistance shelter. The trial court's entry upholding the decision of the ZBA classifying the Dalton Avenue property as a special assistance shelter was in no manner arbitrary, unreasonable or unconscionable.

### *York Street Property*

{¶16} Phillips Supply also challenges the classification of the York Street property. Under the Cincinnati Zoning Code, a district's zoning designation, in this case MG, identifies "the principal land uses" permitted in that district. *See* Cincinnati Municipal Code 1400-07. Phillips Supply argues that in determining whether a land use is permitted in a particular district, a single principal use must be

identified for each building. Thus, it argues that the ZBA erred by finding multiple principal uses of the York Street property, each of which were permitted in an MG district. Rather, it contends that the ZBA should have identified only one principal use for the York Street property, and that the single principal use should have been religious assembly, a use not permitted in an MG district.

### 1. Multiple Principal Uses

{¶17} Although this court has never explicitly held that a property may have more than one principal use, we have issued two recent decisions that have implicitly concluded that it is permissible for a property to have multiple principal uses.

{¶18} In *Citylink Center v. City of Cincinnati*, Citylink, a not-for-profit corporation that had been organized to assist in serving the low-income population of Cincinnati, sought to develop its campus in an area of Cincinnati that had been zoned MG. *Citylink Center*, 1st Dist. Hamilton Nos. C-061037, C-061054 and C-061064, 2007-Ohio-5873, at ¶ 2. Its proposed tenants were Jobs Plus, Crossroads Health Center, The Lord's Gym, and City Gospel Mission. *Id.* at ¶ 3. This court affirmed the trial court's judgment ordering the issuance of a zoning certificate of compliance to Citylink because the proposed uses for each individual tenant were all permitted in an MG district. *Id.* at ¶ 20.

{¶19} In *State ex rel. 506 Phelps Holdings, LLC, v. Cincinnati Union Bethel*, 2013-Ohio-388, 986 N.E.2d 1037 (1st Dist.), this court discussed our holding in *Citylink* with respect to whether a property could have multiple uses. We stated that

> Although we rejected the city's argument in *CityLink* that the several
> uses of the building had to be viewed as one, we did not hold that two

programs housed in the same building and operated by a single legal identity and governing board should never be viewed as a whole to determine the character of the uses for zoning purposes.

*Id.* at ¶ 62. *State ex rel. 506 Phelps Holdings, LLC,* concerned the zoning classification of Cincinnati's Anna Louise Inn. In that case, the trial court had held that the property at issue could not be classified as having a separate use for each individual tenant or group using the property. Rather, the trial court held that the collective uses must be viewed together as an integrated land use. *Id.* at ¶ 55. This court ultimately upheld the trial court's determination that the uses of the property should be considered together as an integrated land use, but we remanded with instructions for the trial court to direct the relevant city officials to determine the zoning classification of the Anna Louise Inn in light of the trial court's finding on integrated use. *Id.* at ¶ 69-71.

{¶20} We hold that a building, such as the York Street property, may have more than one principal use. Whether a building has individual principal uses for each tenant, or whether a building with multiple tenants must be viewed as having one integrated use, must be determined on a case-by-case basis. In this case, the trial court did not abuse its discretion by treating the York Street property as a mixed-use facility with individual principal uses for each tenant and failing to assign the entire property the principal use of religious assembly.

{¶21} The ZBA classified the use of the Exodus Program as "transitional housing." Cincinnati Municipal Code 1401-01-T defines transitional housing as "housing designed to assist persons in obtaining skills necessary for independent living in permanent housing, including homes for adjustment and halfway houses."

11

The ZBA specifically stated that Phillips Supply had not met its burden of establishing that the Exodus Program should be categorized as having the use of religious assembly because "the incorporation of a faith-based element into the program's required 12-step addiction recovery process does not change the principal use."

{¶22} The ZBA classified the Lord's Gym as having the principal use of "indoor or small-scale recreation and entertainment." This use is defined in Cincinnati Municipal Code 1401-01-R2 as "the provision of recreation or entertainment to paying participants or spectators * * * [including] small, generally indoor facilities, although some facilities may be outdoors, including: fitness centers, gymnasiums * * *." The ZBA's decision further stated that the presence of bible study in addition to the fitness training activities did not warrant the classification of the gym as having the use of religious assembly.

{¶23} The Lord's Pantry was classified as having the use of "eating and drinking establishment/restaurants, limited." Cincinnati Municipal Code 1401-01-E1 defines this use as "[r]estaurants providing food and beverage services to patrons who order and pay before eating. * * * Table service is not provided." The ZBA again specifically noted that the Lord's Pantry did not have the use of religious assembly merely because mentors were available to provide life coaching and prayer.

{¶24} The Jobs Plus Employment Network was classified by the ZBA as having the principal use of personal instruction service, which is defined in Cincinnati Municipal Code 1401-01-P10 as the provision of instructional services including, as relevant to this case, tutoring and vocational and trade schools. In determining the principal use for this tenant, the ZBA stated that "the evidence that

the Bible or religious motivation informs the Jobs Plus training does not establish that the principal use should be Religious Assembly where training and placement are the predominant activity."

{¶25} Last, the ZBA's decision determined that the principal use of City Gospel Mission's offices was "office." This use is defined by Cincinnati Municipal Code 1401-01-O as "a facility for a firm or organization that primarily provides professional, executive, management or administrative services."

{¶26} The record indicates that each proposed tenant for the York Street property had its own purpose and position aligned with the social-service campus's overall goal of improving the lives of its participants. Each program does have a spiritual aspect. But, as noted by the ZBA, the spiritual element is a minor part of the programs' overall business aim. The tenants were not part of a larger, collective religious entity, and it was not error for the trial court to fail to assign either each individual tenant, or the overall building, the principal use of religious assembly.

{¶27} We hold that the trial court's decision upholding the ZBA's classification of the York Street property as a mixed-use facility was supported by substantial evidence in the record and was not an abuse of discretion.

### 2. Not a Community-Service Facility

{¶28} Phillips Supply further argues that, if this court determines that a property may have more than one principal use, the two properties at issue must also be classified as having additional principal uses of religious assembly and community-service facility. We have already determined that the trial court did not abuse its discretion in affirming the ZBA's well-reasoned decision holding that

neither property had the principal use of religious assembly. We need not address that argument again.

{¶29} Community-service facility is defined by Cincinnati Municipal Code 1401-01-C15 as "a noncommercial facility established primarily for the benefit and service of the populations of the communities in which they are located." In the *Citylink* case, this court rejected a similar argument and held that the property Citylink sought to develop was not a community-service facility. *Citylink Center*, 1st Dist. Hamilton Nos. C-061037, C-061054 and C-061064, 2007-Ohio-5873, at ¶ 22. We held that the property could not be categorized as a community-service facility because it had not been established primarily for the benefit and service of the residents of the neighborhood in which it was located, but rather for the benefit of the low-income population of Cincinnati and Hamilton County. *Id.* at ¶ 22-23. The same holds true for the properties at issue in this case. They were established not for the benefit of the residents of Queensgate, but for the entire city of Cincinnati. *Citylink* states the law of this district, and on its authority we hold that the trial court did not abuse its discretion by failing to assign the Dalton Avenue and York Street properties the principal use of community-service facility.

### *Judicial Notice*

{¶30} Phillips Supply last argues that the trial court abused its discretion by excluding relevant evidence, namely the documents from the Hamilton County Auditor indicating that City Gospel Mission had been classified as a church for taxation purposes.

{¶31} Phillips Supply had not made these documents part of the record before the ZBA, but had attempted to introduce them for the first time in its

14

administrative appeal by asking the magistrate to take judicial notice of the documents pursuant to Evid.R. 201(B). The Appellees' motion to strike these documents was granted by the magistrate. But the trial court determined that the magistrate had erred in granting the Appellees' motion to strike. It held that judicial notice should have been taken, but it then excluded the documents as irrelevant.

{¶32} The record in an administrative appeal under R.C. Chapter 2506 is limited to the transcript from the administrative hearing. *See* R.C. 2506.03(A). *See also State ex rel. 506 Phelps Holdings, LLC*, 2013-Ohio-388, 986 N.E.2d 1037, at ¶ 43. The record may only be supplemented if "it appears, on the face of that transcript or by affidavit filed by the appellant" that one of five enumerated exceptions applies. R.C. 2506.03(A). These exceptions, as provided in R.C. 2506.03(A), are:

> (1) The transcript does not contain a report of all evidence admitted or proffered by the appellant.
>
> (2) The appellant was not permitted to appear and be heard in person, or by the appellant's attorney, in opposition to the final order, adjudication, or decision, and to do any of the following:
>
> > (a) Present the appellant's position, arguments and contentions;
> >
> > (b) Offer and examine witnesses and present evidence in support;
> >
> > (c) Cross-examine witnesses purporting to refute the appellant's position, arguments, and contentions;
> >
> > (d) Offer evidence to refute evidence and testimony offered in opposition to the appellant's position, arguments, and contentions;
> >
> > (e) Proffer any such evidence into the record, if the admission of it is denied by the officer or body appealed from.
>
> (3) The testimony adduced was not given under oath.

(4) The appellant was unable to present evidence by reason of a lack of the power of subpoena by the officer or body appealed from, or the refusal, after request, of that officer or body to afford the appellant opportunity to use the power of subpoena when possessed by the officer or body.

(5) The officer or body failed to file with the transcript conclusions of fact supporting the final order, adjudication, or decision.

{¶33} None of these exceptions apply to allow for the admission of the documents at issue. Phillips Supply has not contended that they were prevented or disallowed from presenting this evidence to the ZBA. It simply made no attempt to introduce the evidence at that stage of the proceedings. Phillips Supply cannot circumvent R.C. 2506.03 by asking the trial to take judicial notice of additional evidence that would be otherwise inadmissible under the statute.

{¶34} We hold that the trial court erred in taking judicial notice of these documents, but that the error was harmless because the trial court excluded the documents as irrelevant. Phillips Supply's contention that the trial court erred in excluding these documents is without merit.

### Conclusion

{¶35} It was not an abuse of discretion for the trial court to find that the principal use of the Dalton Avenue property was special assistance shelter and not religious assembly or community-service facility. Nor was it an abuse of discretion for the trial court to find that the principal use of the York Street property was not religious assembly or community-service facility, but rather that the property was a mixed-use facility and that each tenant had its own principal use, none of which were religious assembly. Because each use assigned to the Dalton Avenue and York Street properties was permissible in an MG district, we hold that the trial court did not

abuse its discretion in affirming the decision of the ZBA that upheld the city's issuance of building permits for these properties.

{¶36}   Phillips Supply's assignment of error is overruled, and the judgment of the trial court is affirmed.

Judgment affirmed.

**HILDEBRANDT, P.J.,** and **DEWINE, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.